**In re Jerome P. MALVIN, Respondent.**

No. 83–157.

District of Columbia Court of Appeals.

Argued June 1, 1983.

Decided Sept. 12, 1983.

Jackson H. Rose, Asst. Bar Counsel, Washington, D.C., for petitioner, the Board on Professional Responsibility.

No argument was presented on behalf of respondent.

Before MACK, PRYOR and TERRY, Associate Judges.

**PER CURIAM:**

The Board on Professional Responsibility (the Board) has petitioned this court for the temporary suspension of respondent from the practice of law pursuant to Rule XI, § 3(3) of our Rules Governing the Bar. The Board asserts that respondent has violated Disciplinary Rule 6–101(A)(3) by neglecting three legal matters entrusted to him, DR 7–101(A)(1) and (2) by failing to seek the lawful objectives of three clients, DR 2–110(A)(3) by abandoning two clients and refusing to refund their fees, and DR 1–102(A)(5) by ignoring the disciplinary process. The Board has also submitted several affidavits and other documents reflecting serious misappropriation of client funds by respondent. Respondent did not appear before this court at the hearing on the Board's petition to answer the allegations of misconduct.[1] We grant the Board's petition for temporary suspension.

**I**

The Board's charges of misconduct are based primarily on respondent's dealings with five clients: Harvett M. Tate, Louise B. Waller, Rebecca Autry, John F. Terry,[2] and Louis Calomaris. In addition, the Board has provided us with letters from two Superior Court judges outlining respondent's repeated, unexcused failures to appear in court when required.

In the first case, Harvett Tate testified before a hearing committee of the Board that she had paid respondent $300 to represent her in an uncontested divorce proceeding. Respondent later told Mrs. Tate that he had filed her divorce complaint, although in fact he had not. When she tried to reach respondent by telephone, he did not return her calls, nor did he answer a letter she wrote inquiring about the status of her case. He never returned her $300 fee. On the basis of Mrs. Tate's uncontroverted testimony,[3] the hearing committee found that respondent had violated DR 6–101(A)(3) by neglecting a legal matter entrusted to him and DR 7–101(A)(1) and (2) by failing to seek the lawful objectives of his client. The committee recommended that respondent be suspended for one year. The Board accepted the committee's findings, but increased the recommended suspension to a year and a day.

The second and third cases were heard together by a hearing committee. The evidence showed that Louise Waller had paid respondent a $300 fee to prepare an urgently needed petition for a conservatorship for her brother. Respondent finally prepared the petition and filed it more than two months later, but he did not notify Mrs. Waller that he had done so. He also failed to take steps to set a hearing date, to give notice of the petition and hearing to the brother, or to have a guardian *ad litem* appointed. In addition, he did not return Mrs. Waller's calls. In the other case, respondent failed to appear at an evidentiary administrative hearing on Rebecca Autry's claim against her former employer, a government agency, for wrongful discharge. After a notice of non-violation was issued, respondent neglected to appeal the decision within the thirty-day period mandated by statute, although he had earlier agreed to prosecute the appeal. Respondent did not return Autry's calls, nor did he ever return any part of her $500 fee. The hearing committee concluded that respondent had violated DR 6–101(A)(3) by neglecting legal matters entrusted to him, DR 7–101(A)(1) and (2) by failing to seek the legal objectives of his clients, DR 2–110(A)(3) by abandoning his clients and refusing to refund their money, and DR 1–102(A)(5) by ignoring the disciplinary proc-

---

1. The hearing was originally scheduled for May 18, 1983. Respondent did not appear, but he did notify the court that he was ill on that date. The hearing was rescheduled for June 1. Respondent did not appear on that date either, nor did he inform the court of the reason for his absence.

2. Mr. Terry is not related to Judge Terry of this court.

3. Respondent failed to appear before the hearing committee.

ess. Because of these violations, the committee recommended suspension for a year and a day.

In the fourth case, a disciplinary complaint was filed stating that respondent had kept $2,250 in rents collected from Mr. Terry's tenants. When confronted with these allegations, respondent paid Mr. Terry $1,000 in cash and agreed to pay the remainder by October 1982, but as of the date of the hearing in this court (June 1, 1983) he had not done so.

In the fifth case, the board has provided us with affidavits from Louis Calomaris, his father John Calomaris, and Michael Sindler. According to the affidavits, all based on personal knowledge, respondent accepted $5,225 from Louis Calomaris with which he was to make certain payments into the registry of the Superior Court pursuant to a protective order in a landlord-and-tenant case.[4] Respondent wrote a check in Mr. Calomaris' presence to the clerk of the court, but the check subsequently bounced because the account was closed. As a result, a default judgment was entered against Mr. Calomaris for failure to comply with the protective order, and he was evicted. The default judgment was later vacated by the trial court on the ground that it was unfair to penalize the client for his attorney's unethical conduct.

Finally, after the Board had filed its petition for temporary suspension, it received letters from two Superior Court judges stating that respondent had failed on six separate occasions in April and May of this year to appear in court for scheduled hearings. Copies of the two letters, along with four show cause orders issued by one of the two judges, were filed with this court after the hearing on the Board's petition for temporary suspension. In addition, we may take judicial notice that respondent was adjudicated in contempt of court on June 23, 1983, when he failed to appear at a show cause hearing before a third Superior Court judge.

In his answer to this court's order to show cause why the petition should not be granted, respondent stated that Mrs. Tate had asked for his help in retrieving some property from her estranged husband before she filed for divorce. Respondent said that he had met with Mr. and Mrs. Tate several times concerning the property but had not yet convinced Mr. Tate to return it. While these negotiations were going on, respondent stated, he moved his office, so that when the disciplinary complaint was filed, he received very late notice of it. In addition, he asserted that Bar Counsel had lied, in the presence of a witness, about the date of the disciplinary hearing before the committee, and that he had appeared a day late for the hearing because he relied on Bar Counsel's false information. Respondent did not address in his answer any of the other charges of misconduct, nor did he appear before this court to do so when given the opportunity.

Because of respondent's continuing misconduct, the Board has requested this court to suspend him temporarily from the practice of law, which we have authority to do in cases of "great public harm."[5] The Board's petition was authorized by its Chairman and is supported not only by several affidavits but also by the Board's findings in the Tate case and the hearing committee's findings in the Waller and Autry cases, all of which are based on testimony given under oath by individuals with personal knowledge of appellant's misconduct.

---

4. A small part of the money was to be used for payment of a court fee.

5. Rule XI, § 3(3) of our Rules Governing the Bar provides in pertinent part:

On petition of the Board on Professional Responsibility authorized by its Chairman or Vice-chairman, supported by an affidavit demonstrating facts personally known to affi-ant, showing that an attorney appears to be causing great public harm by misappropriating funds to his own use, or by other means, the Court may issue an order with such notice as the Court may prescribe imposing temporary conditions of probation on the attorney or temporarily suspending the attorney, or both.

We also have before us the complaint filed by Mr. Terry and the communications from the two Superior Court judges. All of the evidence shows that respondent is continuing to cause great public harm by misappropriating client funds, neglecting clients, and ignoring the disciplinary process. We therefore grant the petition for temporary suspension.

## II

■ Since this is our first published opinion in a case involving a temporary suspension under Rule XI, § 3(3), we deem it appropriate to chart the route by which we have arrived at our decision. The temporary suspension of an attorney pending the completion of disciplinary proceedings has the same effect as a preliminary injunction barring that attorney from the practice of law. We therefore have applied to this case the standards governing the issuance of preliminary injunctions, adapted to the context of a professional disciplinary proceeding. Thus we have taken into account (1) whether the attorney is causing irreparable public harm by misappropriating client funds to his own use, or by other means, (2) whether there is a substantial likelihood, based on all the available evidence, including affidavits, that a significant sanction will be imposed on the attorney at the conclusion of any pending disciplinary proceedings,[6] (3) whether the balance of injuries, as between attorney and clients, favors a temporary suspension, and (4) whether the public interest would be served by a temporary suspension. *See In re Antioch University,* 418 A.2d 105 (D.C. 1980); *Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958). There is, of course, a good deal of overlap among these four factors, but each of them can be clearly identified, and thus each must be separately considered before an attorney may be temporarily suspended from the practice of law.

We emphasize, in addition, that a temporary suspension is an extreme measure, reserved for exceptional cases, and that the Board must therefore make a strong showing of "great public harm" as required by the rule. A temporary suspension should not be sought, and will not be granted, in a routine disciplinary case.

Guided by these principles, and aided to some extent by precedents from other jurisdictions, we have concluded that a temporary suspension is warranted in this case. *See Florida Bar v. Hunt,* 417 So.2d 966 (Fla.1982) (temporary suspension ordered on the basis of allegations that an attorney violated various sections of the Code on Professional Responsibility with regard to trust monies); *In re Okerman,* 298 N.W.2d 28 (Minn.1980) (attorney admitted misuse of client funds, agreed to practice under supervision, and then continued to misuse client funds; risk of injury to the public held sufficient to justify temporary suspension); *Burleigh v. State Bar of Nevada,* 98 Nev. 140, 643 P.2d 1201 (1982) (temporary suspension ordered of attorney under indictment for conspiracy to commit murder and arson; constitutionality of temporary suspension rule upheld).

## III

■ The Board also asks us to impose two temporary conditions of probation on respondent, pursuant to Rule XI, § 3(3): first, that he be denied access to funds under his control, unless he obtains prior approval of this court or the Board, and second, that he be required to submit to an audit of his personal and business financial records for the period from January 1, 1981, to the present. The first condition will be imposed, but only to the extent that respondent's access to *client* funds will be restricted. We decline to impose the second condition because of the possibility, albeit slight, that to do so might infringe respondent's privilege against self-incrimination.

6. A "significant sanction" would at least include disbarment, suspension, censure by the court, or an order of restitution.

Under the Fifth Amendment to the Constitution, the government may not compel any action by respondent which would force him to be a witness against himself in a criminal case. A court order requiring respondent to submit to an audit would be unconstitutional if it forced him to aid in the discovery, production, or authentication of incriminating evidence. *Andresen v. Maryland,* 427 U.S. 463, 473–474, 96 S.Ct. 2737, 2744–2745, 49 L.Ed.2d 627 (1976). The Fifth Amendment privilege protects the business papers of an attorney who is a sole practitioner, such as respondent, if those papers are sought by legal process and are to be used against him as evidence. *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1255, 88 L.Ed. 1542 (1944). Respondent may also be able to assert the privilege if he can show that he will be subject to criminal prosecution based on the documents requested. *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); *In re Gault,* 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967); *In re Thorup,* 461 A.2d 1018, 1019 (D.C.1983); *see Charlton v. FTC,* 177 U.S. App.D.C. 418, 543 F.2d 903 (1976); *Athans v. Arizona Board of Dentists,* 126 Ariz. 6, 612 P.2d 57 (Ariz.Ct.App.1980); *Black v. State Bar of California,* 7 Cal.3d 676, 499 P.2d 968, 103 Cal.Rptr. 288 (1972). Because it is unclear whether the circumstances here involve instances of criminal misconduct, we will not order respondent to submit to an audit at this time. Instead, we suggest that the Board seek an administrative warrant from the Superior Court pursuant to Super.Ct.Civ.R. 204(c).

### IV

Respondent, Jerome P. Malvin, is therefore temporarily suspended from the practice of law in the District of Columbia, effective immediately. His suspension shall be subject to the provisions of Rule XI, § 3(3), of this court's Rules Governing the Bar, and shall continue until final disposition of all pending disciplinary charges against him, or until further order of this court. Respondent shall also be denied access to any client funds, effective immediately, unless he obtains prior approval of the Board on Professional Responsibility. The Board's request for an order requiring respondent to submit to an audit of his financial records is denied without prejudice.

*It is so ordered.*