**In re Eric L. CUMMINGS, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 83–605.**

District of Columbia Court of Appeals.

Jan. 6, 1984.

Before KERN, BELSON and TERRY, Associate Judges, in Chambers.

**PER CURIAM:**

Respondent was temporarily suspended from the practice of law in the District of Columbia on September 14, 1983. *In re Cummings,* 466 A.2d 1224 (D.C.1983) (*Cummings I*). The Board on Professional Responsibility (the Board) and Bar Counsel have both filed motions asking us to hold respondent in contempt for failure to comply with the order of suspension, other orders and requests of the Board issued pursuant to our order, and certain provisions of our Rules Governing the Bar. The motions raise several legal and factual issues which must be resolved before we may determine whether respondent is in contempt. In this opinion we decide one of the legal issues, namely, the applicability of Rule XI, § 19 of our Rules Governing the Bar to a temporary suspension. We refer the remaining legal and factual issues to a special master for his findings and recommendations, and we order respondent to appear before the special master for a hearing or hearings to show cause why he should not be held in contempt for the reasons set forth in the motions of the Board and Bar Counsel.

**I**

The motions for an adjudication of contempt are based on certain actions taken, or not taken, by respondent in response to our September 14 order of suspension, the Board's order of October 5, 1983, and the requests of Bar Counsel made pursuant to our order. While we leave it to the special master to determine in the first instance whether respondent's conduct amounts to contempt of this court, it is abundantly clear to us that he has been distinctly uncooperative in responding to those requests and orders.

Our temporary suspension of respondent was based on unrebutted affidavits showing his misuse of client funds deposited in escrow accounts. Our decision in *Cummings I* contained four provisions which are pertinent here. First, respondent was ordered to submit to an audit of all of his business records from January 1, 1978, to the

present, and all of his other financial records which were not protected from disclosure by his constitutional privilege against self-incrimination. Second, he was directed to assert that privilege with respect to particular documents "within such reasonable time as the Board . . . may prescribe; otherwise the privilege shall be deemed to have been waived." The Board was then to determine whether particular documents were privileged. Third, the Board was given specific authority to determine "all details of the audit and the manner in which it is conducted" and to resolve "all disputes concerning the audit. . . ." Fourth, respondent was barred from access to all client funds except with prior Board approval. *Cummings I, supra,* 466 A.2d at 1225–1226.

Exercising the authority which we granted to it, the Board ordered respondent to file any assertion of his privilege against self-incrimination with respect to specific documents by September 22, 1983. Respondent replied by asserting the privilege as to "any and all personal records and accounts," basing his claim on his "good faith considered belief" that those records might tend to incriminate him. The Board then issued an order on October 5 directing that all such personal records be submitted to it under seal by October 19, together with a complete list of the documents submitted which would specify

> the factual basis for Respondent's assertions that [each] such document is a personal, rather than a firm, record, and that such document might tend to incriminate Respondent.

The Board's order said that if respondent failed to state the basis for his claim of privilege with respect to any document, he would be deemed to have waived the privilege as to that document.

Respondent acknowledges that he has submitted neither the records requested by the Board nor any list of them, despite the passage of more than two months since the Board's deadline. He maintains that he was entitled to assert his Fifth Amendment

privilege before the Board, on a blanket basis, "for any and all personal records which may tend to incriminate him in a later, criminal proceeding." He argues that specifying a basis for each claim of privilege would, in effect, waive the privilege, "since such designation would acknowledge the respondent's possession and control of the documents, and indicate that the respondent believes that the records are subject to the Court's order."

■ Through its Executive Attorney, the Board also directed respondent to make available all of his corporate, business, and personal financial records for the period beginning January 1, 1978, as to which he did not intend to claim a Fifth Amendment privilege, so that Bar Counsel could make an inventory of them as the first step in the audit. Respondent refused to produce the documents and stated that he would consent to the audit only if it were conducted by a certified public accountant. His refusal to permit the inventory appears to have been in direct contravention of that portion of our order in *Cummings I, supra,* "that all details of the audit and the manner in which it is conducted shall be determined by the Board on Professional Responsibility, and all disputes concerning the audit shall be resolved by that Board." 466 A.2d at 1226.[1]

The Board further asked respondent to submit information relating to his receipt and disbursement of any client funds after September 14, the date of our order in *Cummings I.* Respondent refused to submit that information, stating (through counsel) that he would not do so until certain letters which the Board had sent to various banks in the Washington metropolitan area, which had the effect of freezing the assets in accounts controlled by respondent, were retracted and a letter of apology delivered to him.

Finally, the motion of Bar Counsel asks that respondent be ordered to comply with Rule XI, § 19 of this court's Rules Governing the Bar, and to submit an affidavit to this court certifying his compliance. Section 19 requires, in substance, that a disbarred or suspended attorney promptly notify his clients of his inability to represent them as of the effective date of his disbarment or suspension. Respondent has refused to comply with section 19, contending that it does not apply to an attorney who has been temporarily suspended under Rule XI, § 3(3).

## II

The authority of this court to hold in contempt anyone violating its orders is directly conferred by D.C.Code § 11–741 (1981). *See also Michaelson v. United States,* 266 U.S. 42, 65, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924).

■ Before we rule on the allegations of contempt in this case, however, we have decided to appoint a special master with authority to determine the facts concerning respondent's conduct in response to our September 14 order, to hold an evidentiary hearing or hearings for that purpose, to decide legal issues raised by the parties, and, finally, to recommend to this court whether respondent should be adjudicated in contempt. We are ordering these proceedings because we wish to have a clear and unambiguous record of respondent's actions since his temporary suspension, and because due process requires a hearing when the contempt is alleged to have occurred outside the presence of the court. *In re Oliver,* 333 U.S. 257, 275–276, 68 S.Ct. 499, 508–509, 92 L.Ed. 682 (1948); *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925).

---

1. We included this language in *Cummings I* in order to foreclose exactly the sort of argument which respondent has made. *Cummings I* makes clear, and we reiterate here, that respondent shall have nothing to say about the conduct of the audit except to the extent that he may validly claim a Fifth Amendment privilege as to particular documents. It is not up to respondent to consent to the audit; the Board may proceed with the audit with or without his consent.

■ Our appointment of a special master is founded upon the court's inherent power to provide itself with appropriate instruments which it may require to perform its duties, in this instance to determine respondent's compliance or non-compliance with our September 14 order. *See In re Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); *cf. Morrow v. District of Columbia,* 135 U.S.App.D.C. 160, 417 F.2d 728 (1969) (holding that this court has power under 28 U.S.C. § 1651 to issue "all writs necessary and appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law"). There is specific precedent in this jurisdiction, moreover, for the appointment of a special master in a contempt proceeding. *NLRB v. Arcade-Sunshine Co.,* 76 U.S. App.D.C. 312, 132 F.2d 8 (1942).

### III

The proceedings before the special master shall be governed by Super.Ct.Civ.R. 53(c), (d), (e)(1), and (e)(2), which we incorporate herein by reference. The master is specifically directed to conduct a hearing or hearings at such times and places as he may deem appropriate; to take testimony under oath, to receive pertinent documentary evidence, and to make findings of fact on the issue of whether respondent is in contempt of this court, either by disobedience of our order of September 14, 1983, or any order of the Board based on our September 14 order, or by failure to comply with any of this court's rules; to decide those questions of law which he deems relevant to the proceedings before him; to recommend whether respondent should be held in contempt and, if so, what sanctions should be imposed; and to report to this court his findings of fact, conclusions of law, and recommendations.

One particular question which we refer to the special master is whether, and to what extent, the Board may constitutionally require respondent to turn over his personal records along with a document-by-document statement of the basis of his claim of privilege. Respondent, citing *Hoffman v.*

*United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), and *In re Malvin,* 466 A.2d 1220, 1224 (D.C.App.1983), contends that the Board's order of October 5 would, in effect, force him to waive his Fifth Amendment privilege against his will. The Board maintains that its order would not compel any such involuntary waiver because respondent's records "would be protected by being placed under seal, and further protected by a review to determine the validity of Respondent's claim of privilege by an independent fact-finding body, *in camera,* which would thereafter have no role in the proceeding." We express no opinion at this time on the merits of this question, but assign it to the special master for his consideration.

### IV

■ One of the issues raised by respondent—the applicability of Rule XI, § 19 to a temporary suspension under Rule XI, § 3(3)—is ripe for decision. Respondent contends that because section 19 refers on its face only to "disbarred or suspended" attorneys, it does not apply to "temporarily suspended" attorneys. This argument is one of semantics, not substance. We reject it and hold that one who has been temporarily suspended pursuant to section 3(3) must comply with the requirements of section 19 of Rule XI. The only conceivable conflict between the two sections concerns the meaning of the term "effective date of his ... suspension," as it is used in subsections (1), (2), and (4) of section 19. To resolve this conflict, we further hold that the effective date of a temporary suspension under section 3(3), insofar as it may affect compliance with section 19, shall be the thirtieth day after the entry of the order of temporary suspension. This will permit the temporarily suspended attorney to continue to represent existing clients during the thirty days following the entry of the suspension order, as section 3(3) provides, but will also require that attorney to notify all clients of the temporary suspen-

sion before the expiration of the thirty-day period, as section 19 dictates.

Because this issue has not been decided until today, and because our decision, if strictly applied to respondent, would mean that he is already out of compliance with section 19, we grant respondent fourteen days from the date of this opinion within which to notify his clients of his temporary suspension. Within ten days thereafter respondent shall file with the Clerk of this court an affidavit certifying his compliance, as required by section 19(4).[2] Failure to file the affidavit with the Clerk within the specified time will be considered contempt committed in the presence of the court,[3] and will be treated accordingly.

## V

It is therefore ORDERED that the Honorable Leonard Braman, a retired judge of the Superior Court of the District of Columbia, is hereby appointed and designated as a special master in this case, with the powers and duties set forth in part III of this opinion. The motions of the Board on Professional Responsibility and of Bar Counsel asking that respondent be adjudicated in contempt of this court are referred to Judge Braman, with directions to consider them and to submit a report to this court containing his recommendations with respect to them.

It is FURTHER ORDERED that respondent, Eric L. Cummings, shall appear before Judge Braman for a hearing or hearings, at such times and places as Judge Braman may direct, to show cause why the motions of the Board on Professional Responsibility and of Bar Counsel requesting an adjudication of contempt should not be granted.

It is FURTHER ORDERED that respondent, Eric L. Cummings, on or before January 20, 1984, shall notify all his clients of his temporary suspension from the practice of law in the District of Columbia, in full compliance with Rule XI, § 19(1) and (2), of this court's Rules Governing the Bar.

It is FURTHER ORDERED that respondent, Eric L. Cummings, on or before January 30, 1984, shall file with the Clerk of this court an affidavit containing the information required by Rule XI, § 19(4), of the court's Rules Governing the Bar.

**2.** Rule XI, § 19(4) of our Rules Governing the Bar provides in pertinent part:
  Within ten days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with the Court an affidavit showing: (a) That he has fully complied with the provisions of the order and with this Rule; (b) all other state, federal, and administrative jurisdictions to which he is admitted to practice; and (c) that

he has served a copy of such affidavit upon Bar Counsel. Such affidavit shall also set forth the residence or other address of the disbarred or suspended attorney where communications may thereafter be directed to him.

**3.** See In re Adam's Rib, Inc., 39 Wis.2d 741, 750–752, 159 N.W.2d 643, 649–650 (1968).