990 A.2d 1070

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Barry Kent DOWNEY.**

**Misc. AG No. 23, Sept. Term, 2009.**

Court of Appeals of Maryland.

March 12, 2010.

Marianne J. Lee, Assistant Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Aron U. Raskas, Esquire of Kramon & Graham, P.A. of Baltimore, MD, for respondent.

Argued before BELL, C.J., and HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BELL, C.J.

Maryland Rule 16–771 provides for disciplinary or remedial action, specifically interim suspension, when an attorney has been convicted of certain crimes. As relevant, it instructs:

"(a) Duty of attorney charged. An attorney charged with a serious crime in this State or any other jurisdiction shall promptly inform Bar Counsel in writing of the criminal charge. Thereafter, the attorney shall promptly notify Bar Counsel of the final disposition of the charge in each court that exercises jurisdiction over the charge.

\* \* \*

"(b) Petition in Court of Appeals. Upon receiving and verifying information from any source that an attorney has been convicted of a serious crime, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). The petition may be filed whether the conviction resulted from a plea of guilty, nolo contendere, or a verdict after trial and whether an appeal or any other post-conviction proceeding is pending. The petition shall allege the fact of the conviction and include a request that the attorney be suspended immediately from the practice of law. A certified copy of the judgment of conviction shall be attached to the petition and shall be prima facie evidence of the fact that the attorney was convicted of the crime charged.

"(c) Temporary suspension of attorney. Upon filing of the petition pursuant to section (b) of this Rule, the Court of Appeals shall issue an order requiring the attorney to show cause within 15 days from the date of the order why the attorney should not be suspended immediately from the practice of law until the further order of the Court of Appeals. If, after consideration of the petition and the answer to the order to show cause, the Court of Appeals determines that the attorney has been convicted of a serious crime, the Court may enter an order suspending the attor-

ney from the practice of law until final disposition of the disciplinary or remedial action. The Court of Appeals shall vacate the order and terminate the suspension if the conviction is reversed or vacated at any stage of appellate or collateral review."

A serious crime is defined as "a crime that is in at least one of the following categories: (1) a felony under Maryland law, (2) a crime in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland, and (3) a crime under federal law or the law of any state that is punishable by imprisonment for three years or more." Rule 16–701(k).

■ Pursuant to the Rule 16–771, an attorney charged with a serious crime is required promptly to inform Bar Counsel for each jurisdiction in which he or she is admitted to the Bar, in writing, of the criminal charge and "[t]hereafter ... of the final disposition of the charge...." Rule 16–771(a). With information concerning the conviction in hand, Bar Counsel "may file a Petition for Disciplinary or Remedial Action," in which, in addition to alleging the fact of the conviction, he requests "that the attorney be suspended immediately from the practice of law." Rule 16–771(b). The filing of the petition triggers the issuance by the Court of an order requiring the attorney to show cause why he or she should not be suspended immediately and until further order of the Court and the Court's determination, made after considering the petition and the answers by both the Commission and the attorney, whether to order interim suspension pending final disposition of the disciplinary or remedial proceedings. Rule 16–771(c). Prerequisite to that determination is a finding by the Court that the attorney has, in fact, been convicted of a serious crime. Id. As is the case with the filing of the petition, the decision whether to order an interim suspension is discretionary, rather than mandatory. *Attorney Griev. Comm'n. v. Protokowicz,* 326 Md. 714, 718, 607 A.2d 33, 35 (1992).

Barry K. Downey, the respondent, co-founder and director of E–Gold, Ltd. and Gold & Silver Reserve, Inc., corporations

engaged in money transmission, was charged in multiple counts in an indictment filed in the United States District Court for the District of Columbia, with engaging in the business of money transmission without a license, in violation of D.C.Code § 26–1002,[1] aiding and abetting the operation of an unlicensed money transmitting business and conspiring with the aforementioned corporations to launder monetary instruments and to commit an offense against the United States. Subsequently, the respondent pled guilty to violating § 26–1002, as a consequence of which the remaining charges were dismissed. In the Statement of Offense, the respondent and the Government agreed that, although the respondent "participated in developing the E–Gold operation's [2] business model and corporate structure, including its compliance with state and federal laws," and "[t]hroughout its operation . . . was aware of the E–Gold operation's activities and that the business was not licensed as a money transmitting business with the District of Columbia," he "was not extensively involved in the business's day-to-day funds transactions operations."

The respondent was sentenced, on November 20, 2008, to a 180–day suspended sentence, in favor of thirty-six (36) months probation and ordered to pay a fine of $ 2,500.00,[3] a special assessment of $ 100.00 and to perform 300 hours of community service, at least 100 hours in each year of his probationary

---

1. D.C.Code § 26 1002, as relevant, provides:
   "(a) After the effective date of this chapter, no person shall engage in the business of money transmission without obtaining a license issued by the Superintendent under § 26–1009, except as provided in subsection (d) of this section and in § 26–1003."
   Subsection (d) grandfathers persons licensed pursuant to another section of the D.C.Code until their application for license under this section, filed within 90 days of its effective date, has been acted upon. Section 26–1003(d).

2. In the Statement of Offense and throughout the proceedings, references to the corporation were to "E–Gold." We should do likewise.

3. Pursuant to § 26–1023(c), engaging in the business of money transmission without a license is a felony punishable by fine of not more than $ 25,000.00, imprisonment for not more than 5 years, or both.

period. As conditions of probation, the respondent was ordered either to "obtain the necessary state license in any states that require the licensing of businesses engaged in money transmitting or submit a request for an advisory opinion from such a state that the E–Gold operation is not required to be licensed" or to stop operation should licensing not be achieved.

Before imposing that sentence, however, the trial judge expressed the opinion that, although a serious violation, the offense to which the respondent pled was "just a regulatory compliance issue." She also accepted the representation that, because he was not expert in the area, the respondent relied on attorneys, hired for that purpose, to advise him and the companies as to the law governing money transmitting companies and that, together "they were trying to figure it out . . . *they were trying.*" Noting the lack of a prior criminal history, the trial judge finally observed:

"Mr. Downey is a fine upstanding member of his community, of his family. He is clearly a good lawyer and a good husband and a good father and a good member of his church in his community. . . .

"And I believe him when he says that he didn't intend to violate the law. It happened that way, it came out that way. He didn't intend it to be a violation."

As he was required by Rule 16–771(a) to do, the respondent, in July 2008, immediately after entering his guilty plea and therefore before being sentenced, reported the fact of his guilty plea to Bar Counsel in Maryland and in the District of Columbia, the jurisdictions in which he was admitted to practice. The District of Columbia Bar Counsel, acting pursuant to D.C. Bar R. XI, § 10, the District of Columbia's equivalent of Rule 16–771, "notified"[4] the District of Columbia Court of

---

4. D.C. Bar R. XI, § 10(a), as relevant, provides:

"Upon learning . . . that an attorney has been found guilty of a crime or has pleaded guilty or nolo contendere to a criminal charge in a court outside the District of Columbia or in any federal court, Bar Counsel shall promptly obtain a certified copy of the court record or

Appeals of the respondent's guilty plea on September 17, 2008, *In re Downey*, 960 A.2d 1135, 1136 (D.C.2008), and, by inclusion of a proposed order to that effect, requested that the court temporarily suspend the respondent from the practice of law, as the Rule required be done. Subsection (c) of D.C. Bar R. XI provides:

"(c) Action by the Court—Serious crimes.—Upon the filing with this Court of a certified copy of the record or docket entry demonstrating that an attorney has been found guilty of a serious crime or has pleaded guilty or nolo contendere to a charge of serious crime, the Court shall enter an order immediately suspending the attorney, notwithstanding the pendency of an appeal, if any, pending final disposition of a disciplinary proceeding to be commenced promptly by the Board."

The Rule, however, does permit the court, "[up]on good cause shown," to set aside the immediate suspension order "when it appears in the interest of justice to do so." [5]  Relying

---

docket entry of the finding or plea and transmit it to this Court and to the Board. The attorney shall also file with this Court and the Board, within ten days from the date of such finding or plea ... a certified copy of the court record or docket entry of the finding or plea."

5. This is in stark contrast to Maryland Rule 16–771(c), in which it is clearly and unambiguously provided that, in response to an order to show cause, the respondent has the burden to show cause why a temporary suspension should not be ordered. The District of Columbia Court of Appeals refused to interpret Rule XI, § 10(c) as placing the burden to show cause on Bar Counsel in accordance with the interpretation it, in *In re Malvin*, 466 A.2d 1220, 1223 n. 5 (D.C.1983), had given prior Rule XI, § 3(3), which permitted a temporary suspension in cases in which it appeared that an attorney was "causing great public harm by misappropriating funds to his own use, or by other means." It reasoned:

"Because respondent has been convicted of a 'serious crime,' Rule XI, § 10(c) requires *him* to show 'good cause' why the suspension order that would otherwise issue as a matter of course should be stayed or 'set aside.' Respondent's contrary suggestion that, as in *Malvin*, the burden here is on Bar Counsel to justify his interim suspension is contrary to § 10(c)'s language and ignores his conviction for a serious crime. The respondent in *Malvin* had not been so convicted when Bar Counsel sought his emergency suspension. That

on this provision, the respondent filed, prior to the court's issuance of a suspension order, a motion, which Bar Counsel opposed, asking the court not to enter or to stay the issuance of any order of temporary suspension. 960 A.2d at 1136.

The court sided with the respondent. In rejecting Bar Counsel's argument and staying the respondent's suspension from the practice of law, the court considered four (4) factors:

"(1) whether allowing [the respondent] to continue to practice poses an undue risk of harm to the public; (2) whether there is a substantial likelihood, based on the available evidence, that the disciplinary proceeding will result in imposition of a 'significant sanction'; (3) whether 'the balance of injuries' favors stay of the suspension; and (4), related to all these, whether 'a suspension is in the public interest.' "

*Id.,* citing and quoting *In re Malvin,* 466 A.2d 1220, 1223 (D.C.1983). It reasoned:

"[R]espondent has shown good cause for the court to stay the interim suspension. His prior unblemished record as an attorney; his plea of guilty to what amounts to a strict liability offense involving no *scienter* or moral turpitude; and the fact that his violation arose from conduct outside of his normal legal practice all suggest a very low degree of risk that permitting him to practice in the interim will harm the public. For the same reasons, but subject of course to development of a factual record in the disciplinary process, we think that the likelihood that respondent will receive a significant sanction, i.e., a suspension (if at all) of more than brief duration, is very small. Stated differently, there is a reasonable possibility on this record that interim suspension might exceed the sanction that will eventually be imposed on respondent. Considering, finally, the harm to respon-

difference in situations explains the differing assignment of burden of proof in the two cases."

*In re Downey,* 960 A.2d at 1137. Nevertheless, therefore, in light of the interpretation given D.C. Bar R. XI, § 10(c) by the District of Columbia Court of Appeals, the effect of the provisions is the same.

dent's livelihood and ability to support his family that interim suspension may entail, we conclude that respondent has met his burden to show good cause for why the court should stay its hand."

*Id.* at 1137. Bar Counsel's motion for reconsideration was denied. There was no issue raised as to the respondent's compliance with the terms of the plea agreement. Indeed, the court specifically pointed out that the respondent "and his business partners have taken steps to see that the companies are properly licensed and monitored, and have ceased operating them in the meantime." [6] *Id.* at 1136.

The Attorney Grievance Commission of Maryland, the petitioner, acting through Bar counsel, filed against the respondent a Petition for Disciplinary or Remedial Action,[7] in

---

6. What is not so clear, given the timing of the notification, the sentencing of the respondent and the issuance of the court's opinion, is the extent to which the court was aware of the trial court's rationale for the sentence it imposed and how, if at all, that influenced the court's suspension decision. That is complicated further by the facts that the respondent was sentenced on November 20, 2008, but the certified transcript was not completed until December 17, 2008, almost two weeks after the court's opinion had been filed. Nevertheless, the assessment of the likelihood of a substantial sanction after adjudication on the merits and the relationship of the felonious activity to the respondent's practice are certainly matters appropriately and uniquely to be considered by the court.

7. In addition to the prima facie evidence of conviction, the "certified copy of the judgment of conviction," required by Rule 16–771(c) to be filed with the Petition, the petitioner attached to the Petition the Superceding Indictment under which the respondent was prosecuted, the Statement of Offense, to which the respondent agreed and stipulated, and the letter, dated July 18, 2008, in which the complete terms of the plea offer made to, and accepted by, the respondent were set forth. In his response, the respondent states:

"The rule does not contemplate that Bar Counsel will file, or that the Court will consider at this stage, in connection with a request for temporary suspension, a statement of charges alleging professional misconduct or other unproven allegations. (Indeed, Md. Rule 16–771(d) specifically states that '[i]f the Court of Appeals denies a petition filed under section (b) of this rule, Bar Counsel may [then] file a Statement of Charges under Rule 16–741 . . . .)' "

"Here, Bar Counsel has submitted to the Court along with the Petition an Indictment that is comprised predominantly of allegations

which, referencing the acceptance of the respondent's guilty plea to a felony and sentencing, it was charged that the respondent violated Rule 8.4, Misconduct,[8] of the Maryland

> that were never pursued in court against Mr. Downey and charges against him that were dismissed with prejudice. (Indeed, at the conclusion of the federal action there was a large gap between the *allegations* made in the Indictment, on the one hand, and the facts to which the government stipulated in the Statements of Offense and the sentences that Judge Collyer imposed[] ]. In the Petition itself, Bar Counsel has also asserted facts and made charges that are unrelated to the conviction and are thus unauthorized by, and inappropriate under, Rule[ ] 16–771(b). Mr. Downey's response, therefore, focuses on the nature of the conviction, and he requests that the Court strike or disregard those extraneous matters in its consideration of the request for temporary suspension."

Thus, the respondent takes issue with the petitioner's appending to the petition anything other than the certified copy of the judgment of conviction and appears to suggest that the filing of any petition other than one "seeking temporary suspension" is inappropriate. We are not persuaded.

There is no ambiguity in the interim suspension procedure and no inconsistency between Rule 16–771(b) and (d). Rule 16–771(b), by its express terms, permits-it does not require-the filing by Bar Counsel of a "Petition for Disciplinary or Remedial Action." If such a petition is filed, the fact of conviction must be alleged and the request for temporary suspension must be made. That is what was done here. Rule 16–771(d) simply permits Bar Counsel to file a petition alleging any other charge that may be appropriate if the Court determines that conviction was not of a serious crime, thus, denying the petition alleging such a conviction. *See* D.C.Bar R. XI, § 10(d) (indicating that "if the Court determines under subsection (c) of this section that the crime is not a serious crime, the proceeding shall go forward on any charges under the Rules of Professional Conduct that Bar Counsel may institute.").

To be sure, the only issue to be decided at this preliminary stage is the propriety of temporarily suspending the respondent as a result of his conviction of a serious crime. That decision can not be made in a vacuum or, indeed, in the absence of a charge. It is, therefore, not surprising a Petition for Disciplinary or Remedial Action, containing a certified judgment of conviction, was filed against the respondent. The Indictment and the Statement of Offense and the plea offer, when considered with the certified judgment, merely provides, and we shall consider it only as, context for the decision to be made.

8. Rule 8.4 of the Maryland Lawyer's Rules of Professional Conduct, as relevant, provides:
> "It is professional misconduct for a lawyer to:
> "(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

Rules of Professional Conduct, as adopted by Maryland Rule 16–812. The petitioner also requested this Court, pursuant to Maryland Rule 16–771(c), to issue an order requiring the respondent to "show cause in writing why he should not be suspended immediately from the practice of law in this State until further order of this Court" and to "[s]uspend the respondent immediately from the practice of law."

In his answer to the Show Cause Order, the respondent urged the Court to reject the petitioner's request that it order the respondent immediately suspended from the practice of law. Noting what is the well-settled holding of this Court, that an interim suspension for conviction of crime, pursuant to Maryland Rule 16–771(c), is permitted, not required, *Attorney Griev. Comm'n. v. Protokowicz*, 326 Md. at 718, 607 A.2d at 35 ("As respondent points out, Rule BV16 authorizes an interim suspension; it does not mandate such action."); *Attorney Griev. Comm'n. v. Klauber*, 283 Md. 597, 599–600, 391 A.2d 849, 851 (1978) (footnote omitted) ("It must be borne in mind that Rule BV16 does not make suspension mandatory, but makes it discretionary in this Court pending resolution of an appeal."), he argued that interim suspension is neither required nor warranted for the protection of the public. In support of that argument, he focused on his professional history, highlighting specifically the absence of disciplinary encounters, never mind sanctions, and on his record and his pro-bono and community efforts. The respondent also found it significant and, so, emphasized the prior proceedings involving his guilty plea, the guilty plea sentencing proceedings themselves and the interim suspension proceedings in the District of Columbia Court of Appeals. Thus, the respondent directed our attention to the sentencing judge's comments with regard to his competence, his community and church

---

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice...."

involvement and the intent with which the offense to which he pled guilty was committed, and that, as to the latter, the sentencing judge believed that the respondent did not intend to commit the crime of which he was convicted. Of equal significance, the respondent submitted, was the decision of the District of Columbia Court of Appeals to deny its Bar Counsel's motion for interim suspension.

For the petitioner, it is enough to merit temporary suspension that the respondent has been convicted of violating D.C.Code § 26–1002 and Rule 16–771 permits that result. Although asked more than once at oral arguments for a basis other than the aforementioned, no other analysis or rationale was offered.

An interim suspension is a "preliminary matter" to be resolved "without a full record," *Klauber*, 283 Md. at 600, 391 A.2d at 851, or a hearing on the merits; hence, it is in the nature of an emergency measure. As such, the decision to suspend on an interim basis depends on, and follows, consideration of the petition filed by Bar Counsel and the attorney's answer to the order to show cause issued by the Court and requires a determination that the attorney has been convicted of a serious crime. Thus, in addition to the fact of conviction, the nature of the crime, i.e., what the elements of the crime tell us about the attorney's character and, hence, the need to protect the public, and only judicial admissions made by the attorney may be considered. The suspension decision may not be based on the facts alleged by bar counsel to aggravate the particular conviction or facts that are not necessarily evident from the conviction itself.

This Court addressed the interim suspension rule and its applicability when an attorney has been convicted of a serious crime in *Protokowicz, supra, albeit* in the context of the predecessor to Rule 16–771(b), Maryland Rule BV16 a 2.[9] That Rule provided:

---

9. Rule BV 16 a 1 defined the crimes to which the Rule applied. They included crimes that were felonies under Maryland law and "any other crime punishable by imprisonment for three years or more."

"If an attorney is convicted of a crime to which this Rule is made applicable pursuant to Rule BV16 a 1, whether the conviction results from a plea of guilty or of *nolo contendere* or from a verdict after trial, and regardless of the pendency of an appeal or any other post-conviction proceeding, the Bar Counsel shall file charges with the Court of Appeals alleging the fact of the conviction and requesting that the attorney be suspended from the practice of law. A certified copy of the judgment of conviction shall be attached to the charges and shall be *prima facie* evidence of the fact that the attorney was convicted of the crime charged."

*Id.* at 715, 607 A.2d at 34. We stated that the purpose of the Rule "is to protect the public from acts of an attorney who has been convicted of certain crimes . . . ."[10] *Id.* at 716, 607 A.2d at 34. Acknowledging that a conviction for the crime of breaking and entering under former Md.Code (1957, 1992 Replacement Vol.) Art. 27, § 31A, "standing alone, may suggest that an interim suspension would be inappropriate in a variety of circumstances surrounding a conviction of this offense," *id.* at 719, 607 A.2d at 35, the Court proceeded to consider "the surrounding circumstances of the offense as established by facts not in dispute" and, on that basis, to order an immediate suspension. *Id.* at 720, 607 A.2d at 36. Among the decisive "surrounding circumstances" considered by the Court were:

"The Respondent and Mr. Sanders broke into Mrs. Sanders' home to take a stock certificate claimed by Mr. Sanders. Mrs. Sanders' toilet was stopped up and her contraceptive

---

**10.** A majority of the Court determined that it had a further purpose, "to maintain public confidence in the legal profession." 326 Md. at 716, 607 A.2d at 34. This extension of the purpose was necessary because, although the crime of which Protokowicz had been convicted, breaking and entering, was a "serious crime" within the definition of Rule BV 16 a, being "a crime punishable by imprisonment for three years or more," it had no required moral element or character flaw, as was envisioned by the element of the Rule's predecessor that the interim suspension eligible crime be one "involving moral turpitude," and, consequently, the factors that would establish the offense, "standing alone, may suggest that an interim suspension would be inappropriate in a variety of circumstances surrounding a conviction of this offense." 326 Md. at 719, 607 A.2d at 35.

devices were placed on the bathroom floor. A photograph of Mrs. Sanders and her daughter was turned on its side. The Respondent allegedly stole and read Mrs. Sanders' personal letters. During the break-in, the Respondent advised his former client that he could remove marital property from Mrs. Sanders' residence. The Respondent assisted his former client with the theft of Mrs. Sanders' jewelry and other personal property. The Respondent took a bottle of champagne from Mrs. Sanders' refrigerator and spilled the champagne on the floor."

*Id.* at 719, 607 A.2d at 35–36.

■ As in *Protokowicz,* the offense of which the respondent stands convicted does not reveal anything about the respondent's character and, thus, the need to protect the public from his practice of law and, indeed, "standing alone, may suggest that an interim suspension would be inappropriate in a variety of circumstances surrounding a conviction of this offense." Unlike *Protokowicz,* the "surrounding circumstances" do not suggest or indicate that interim suspension would be justified or appropriate. On the contrary, they confirm that such a suspension would, in fact, be inappropriate in this case.

The applicable "surrounding circumstances" in this case are the sentencing proceedings and the interim suspension proceedings before the District of Columbia Court of Appeals. In the former, in her sentencing comments, the sentencing judge confirmed that the nature of the crime, in and of itself, did not suggest or in any way indicate the need to protect the public; she characterized it as "just a regulatory compliance issue." Moreover, the judge expressed the belief that the respondent did not intend to violate the law and, in fact was trying, with the help of counsel hired for the purpose, to comply. Further evidence of the sentencing judge's views on the subject of the public's need for protection is her characterization of him as a fine community and church person and a fine lawyer.

The result of the interim suspension proceedings are even more persuasive with regard to the appropriate resolution of the suspension issue in this case. The court, as we have seen,

citing the respondent's "unblemished record as an attorney," the nature of the crime—that it "involv[ed] no *scienter* or moral turpitude"—, and that the "violation arose from conduct outside of his normal legal practice," determined that the respondent had met his burden of showing that an interim suspension was not required for the protection of the public.

Those considerations that the District of Columbia Court of Appeals found determinative apply equally here. We agree with that court that the respondent has shown good cause. Accordingly, we deny the petitioner's request for interim suspension.

It is so Ordered.