ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND *v.* HOWARD G. REAMER

[Misc. Docket (Subtitle BV), No. 12, September Term, 1976.]

*Decided November 2, 1977.*

*Motion for reconsideration and stay or, in the alternative, modification of suspension order filed November 3, 1977; denied November 4, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*L. Hollingsworth Pittman, Bar Counsel,* for petitioner.

*Michael E. Marr* for respondent.

MURPHY, C. J., delivered the opinion of the Court.

The issue before us in this attorney disciplinary proceeding is whether the petition of Bar Counsel seeking the interim suspension of a lawyer from the practice of law in Maryland should be granted.

Howard G. Reamer, a member of the Maryland Bar, was found guilty on October 7, 1976, by a jury in the United States District Court for the District of Maryland of 10 counts of a 21-count felony indictment charging violation of 18 U.S.C. § 1341 (1970) (mail fraud)[1] and aiding and abetting in a mail fraud.[2] He was sentenced to concurrent 5-year terms of imprisonment on each count and thereafter

---

[1]. "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, ... for the purpose of executing such scheme or artifice ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[2]. See 18 U.S.C. § 2 (1970).

entered an appeal to the United States Court of Appeals for the Fourth Circuit.

On February 25, 1977 Bar Counsel filed a petition to suspend Reamer from the practice of law, pursuant to Maryland Rule BV16, which provides:

> "If an attorney is convicted in any judicial tribunal of a crime involving moral turpitude, . . . regardless of the pendency of an appeal . . ., the Bar Counsel shall file charges with the Court of Appeals alleging the fact of the conviction and requesting that the attorney be suspended from the practice of law. . . ."

The petition to suspend Reamer specifically alleged that the crimes of which he was convicted involved moral turpitude.

Answering the petition to suspend, Reamer alleged that Rule BV16 violated the Fourteenth Amendment to the Federal Constitution and Article 23 of the Maryland Declaration of Rights because it authorized the summary suspension of an attorney from the practice of law without affording him due process of law and without permitting completion of the appellate process.

We heard oral argument on the petition to suspend on April 15, 1977, at which time Reamer additionally contended that the evidence adduced at his trial did not demonstrate that the crimes of which he was convicted involved moral turpitude. As of that time, a transcript of Reamer's criminal trial had not been completed. We denied the petition to suspend, without assigning reasons. Bar Counsel filed a timely motion for reconsideration on May 13, 1977. We deferred acting on the motion pending receipt of supplemental briefs. We decided to permit reargument and heard the matter on October 4, 1977. As of that time, Reamer's trial transcript was still not completed, although a copy of the District Court's instructions to the jury was made available to us.

The indictment charged that Reamer, from a date prior to July 12, 1971, and continuing up to July 1, 1974, devised a scheme to defraud and obtain money and property by false

and fraudulent pretenses from various insurance companies. It specified that in the course of his business as an attorney, Reamer represented clients alleged to be injured as a result of accidents involving individuals insured by insurance companies; that as part of the scheme Reamer referred his clients to various doctors and chiropractors, from whom he procured false and fraudulent medical reports and inflated bills which he submitted to insurance companies as a basis for settlement of his clients' claims; and that Reamer agreed with the doctors and chiropractors that he would pay the medical bills submitted by them in full or in such lesser amounts as he might determine, even though in all cases he represented to the insurance companies that such payments were made in the full amount. The indictment also charged that, as part of the scheme, Reamer engaged "runners" to procure victims of accidents as his clients and that they were referred to doctors and chiropractors with whom he was associated and fraudulently induced to report that they had sustained injuries. It was alleged in each count of the indictment that Reamer knowingly used the United States Mails, by making various specified mailings, for the purpose of executing his fraudulent scheme.

(1)

We first consider whether the crimes of which Reamer was convicted involved moral turpitude within the contemplation of Maryland Rule BV16. It is clear from our cases that the term "moral turpitude" connotes a fraudulent or dishonest intent, and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. *Attorney Griev. Comm'n v. Andresen*, 281 Md. 152, 379 A. 2d 159 (1977); *Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 374 A. 2d 354 (1977); *Maryland St. Bar Ass'n v. Kerr*, 272 Md. 687, 326 A. 2d 180 (1974); *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 318 A. 2d 811 (1974).

The essential elements of mail fraud under 18 U.S.C. § 1341 are the intentional devising of a scheme to defraud or to obtain money or property by false pretenses,

representations, or promises, and the use of the United States Mails for the purpose of executing the fraudulent scheme. *United States v. Maze,* 414 U. S. 395, 94 S. Ct. 645, 38 L.Ed.2d 603 (1974); *Pereira v. United States,* 347 U. S. 1, 74 S. Ct. 358, 98 L. Ed. 435 (1954); *United States v. Johnston,* 547 F. 2d 282 (5th Cir. 1977); *United States v. Shryock,* 537 F. 2d 207 (5th Cir. 1976); *United States v. Street,* 529 F. 2d 226 (6th Cir. 1976); *United States v. Perkal,* 530 F. 2d 604 (4th Cir. 1976); *United States v. Britton,* 500 F. 2d 1257 (8th Cir. 1974); *United States v. Schall,* 371 F. Supp. 912 (W.D. Pa. 1974). *See also* D. Crumbaugh, *Survey of the Law of Mail Fraud,* 1975 U. Ill. L. F. 237-53. Generally, the cases indicate that a scheme to defraud within the meaning of the mail fraud statute consists of a pattern of behavior calculated to deceive persons of ordinary prudence and comprehension. *United States v. Beitscher,* 467 F. 2d 269 (10th Cir. 1972); *Irwin v. United States,* 338 F. 2d 770 (9th Cir. 1964).

A number of state jurisdictions have held that a conviction under the federal mail fraud statute involves moral turpitude and warrants the suspension or disbarment of an attorney from the practice of law. *See In re Leonard,* 64 Ill. 2d 398, 356 N.E.2d 62 (1976); *In re Fumo,* 52 Ill. 2d 307, 288 N.E.2d 9 (1972); *Neibling v. Terry,* 352 Mo. 396, 177 S.W.2d 502 (1944); *Ohio State Bar Association v. Mackay,* 46 Ohio St.2d 81, 346 N.E.2d 302 (1976); *In re Rosenfield,* 111 R. I. 924, 304 A. 2d 52 (1973); *In re Comyns,* 132 Wash. 391, 232 P. 269 (1925); *In re West,* 155 W. Va. 648, 186 S.E.2d 776 (1972). *See also Ponzi v. Ward,* 7 F. Supp. 736 (D. Mass. 1934), where an alien convicted of using the mails to defraud was held to have committed a crime involving moral turpitude under the immigration statute; and *State Dent. Coun. & Exam. Bd. v. Friedman, D.D.S.,* 27 Pa. Commw. Ct. 546, 367 A. 2d 363 (1976), holding that a dentist's license was properly suspended upon conviction of mail fraud since the crime was one involving moral turpitude.

In *Maryland St. Bar Ass'n v. Kerr,* 272 Md. 687, 326 A. 2d 180 (1974), we stated, without discussing the point in any detail, that fraud was an element of the crime of mail fraud under 18 U.S.C. § 1341; and that the offense involved moral

turpitude, thereby justifying disbarment of an attorney in the absence of mitigating circumstances permitting the imposition of a lesser sanction.

Reamer suggests that in recent years the mail fraud statute has been broadened in scope by decisions of the federal courts and, as a result, the standards for establishing fraudulent intent have been so relaxed that the offense can no longer be considered a crime which, as a matter of course, always involves moral turpitude. In this connection, Reamer argues that the mere fact that he was convicted of mail fraud does not mean that he perpetrated a fraud or possessed a fraudulent or dishonest intent. He claims that a conviction under the mail fraud statute is now permissible in a case similar to his own where, after the attorney settles the claim with the insurance company, he prevails upon the physician, in the best interests of his client, to reduce his fee because the overall settlement was not as advantageous as had been anticipated.

We need not decide in this case whether a conviction for mail fraud, in any and all circumstances, will always involve moral turpitude. It is enough that we determine in this case, from a review of the allegations of the indictment and the District Court's charge to the jury, and the jury's verdict, that the crimes of which Reamer was convicted plainly involved moral turpitude.

The District Court, after recounting the charges against Reamer, fully instructed the jury with respect to the elements of mail fraud. The court told the jury that Reamer could not be found guilty unless it found that he had a specific intent to defraud the insurance companies. It said:

> "[T]he question here is not whether somebody in fact has been defrauded; it is not whether the defendant has profited by some transaction or whether someone else was injured thereby. But did the defendant, Howard G. Reamer, intend to defraud. If he intended to defraud by a plan or scheme, it is not important whether he accomplished it or not.

"The defendant denies that he acted with intent to defraud. It is the contention of the defendant that his acts were done for some purpose other than to defraud these insurance companies and that the circumstances of this case indicate that his acts were in good faith. Good faith is a complete defense to the crime of mail fraud. One who acts with honest intention or one who maintains a belief honestly held by him is not chargeable with fraudulent intent even though such honest intention or honest belief is erroneous. Evidence which establishes only that a person made a mistake in judgment or was careless does not establish fraudulent intent.

"In determining whether the defendant acted in good faith or with the intent to defraud, you should consider all the facts and circumstances in the case. If you find from all the evidence that the defendant acted in good faith, then you should find him not guilty. If you should find beyond a reasonable doubt that the defendant acted with intent to defraud and if you further find that the government has proved all of the other essential elements of a particular Count, then you should find the defendant guilty of that Count."

\* \* \*

"The fact that the defendant may have had a laudable motive in seeking to increase the net amount of money that a client would receive as settlement of his or her personal injury claim is irrelevant in this case and would not justify the defrauding of an insurance company, if you find that in fact the defendant had the intent to defraud as alleged in the indictment."

The jury's finding of guilt of mail fraud and aiding and abetting in a mail fraud under these instructions, in light of the allegations of the indictment that he procured false and

fraudulent medical reports and bills, clearly indicates that Reamer's convictions involved moral turpitude within the contemplation of Rule BV16.

(2)

Reamer contends that the right or privilege of an attorney to practice law is property within the protection of the Fourteenth Amendment to the Federal Constitution and Article 23 of the Maryland Declaration of Rights. He argues that Rule BV16 runs afoul of this constitutional protection because it provides for summary suspension of an attorney from the practice of law without due process of law and without permitting completion of the appellate process. We find no merit in this argument.

Rule BV16 provides that the Court, upon receipt of a petition to suspend an attorney for conviction of a crime involving moral turpitude, shall issue an order to show cause why the suspension should not be ordered. It provides in subsection b that the Court, upon consideration of the charges contained in the petition to suspend, and the attorney's answer thereto "may enter an order, effective immediately suspending the attorney from the practice of law until its further order." Subsection c provides that upon suspension, further proceedings on the charges shall be promptly conducted to determine whether the crime of which the attorney was convicted warrants discipline and, if so, the extent thereof. The rule also provides that if the conviction is reversed on appeal, the suspension shall be terminated.

It is true, of course, that the privilege of practicing law is a valuable one and that the requirements of procedural due process must be met before a State can exclude a person from practicing law. *Willner v. Committee on Character*, 373 U. S. 96, 83 S. Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Bd. of Bar Examiners*, 353 U. S. 232, 77 S. Ct. 752, 1 L.Ed.2d 796 (1957). It is equally true, however, that there is no vested right in an individual to practice law, and that the State can bestow the privilege upon such conditions governing its

exercise as will be consistent with the privilege's nature and purpose. *Matter of Isserman*, 345 U. S. 286, 73 S. Ct. 676, 97 L. Ed. 1013 (1953); *Fellner v. Bar Ass'n*, 213 Md. 243, 131 A. 2d 729 (1957); *In re Collins*, 188 Cal. 701, 206 P. 990 (1922). That it is within the inherent and fundamental powers of this Court to act in attorney disciplinary matters, and to prescribe the continued possession of good moral character by attorneys as a prerequisite to the right to practice, is no longer open to question. *Maryland St. Bar Ass'n v. Boone*, 255 Md. 420, 258 A. 2d 438 (1969). The exercise of this power is judicial in character and permits the Court to protect itself, the legal profession and the public. *Braverman v. Bar Assn. of Balto.*, 209 Md. 328, 121 A. 2d 473 (1956). As we said in *Maryland St. Bar Ass'n v. Agnew, supra,* 271 Md. at 549, "[a] court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute."

The provisions of Maryland Rule BV16 authorizing the interim suspension of a lawyer convicted of a crime involving moral turpitude are similar to those in effect in 19 other states.[3] Indeed, Rule 8 of the Revised Rules of the Supreme Court of the United States provides for the "forthwith" interim suspension of any member of its bar who "has been disbarred from practice in any State, . . . or [who] has been guilty of conduct unbecoming a member of the bar of this court." Interim suspension of an attorney convicted of a crime has withstood challenge in a number of cases. *See, e.g., In re Bogart,* 9 Cal. 3d 743, 511 P. 2d 1167, 108 Cal. Rptr. 815 (1973), *appeal dismissed,* 415 U. S. 903 (1974); *In re Collins,* 188 Cal. 701, 206 P. 990 (1922); *Florida Bar v. Craig,* 238 So. 2d 78 (Fla. 1970); *In re Bloor,* 21 Mont. 49, 52 P. 779 (1898).

Under New York law, a lawyer is summarily disbarred upon conviction of a felony. *Mitchell v. Association of Bar of*

---

**3.** Alabama, Alaska, Connecticut, Massachusetts, Minnesota, Nevada, New Hampshire, Ohio, Oregon, South Carolina, Pennsylvania, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

*City of N.Y.*, 40 N.Y.2d 153, 351 N.E.2d 743, 386 N.Y.S.2d 95 (1976), involved the summary disbarment of the former Attorney General of the United States. The constitutionality of the New York procedure was there upheld, the Court of Appeals of New York stating that the primary concern was the protection of the public interest, a concern which outweighed any interest the convicted attorney has in continuing to earn a livelihood from the practice of law. The court said:

> "To permit a convicted felon to continue to appear in our courts and to continue to give advice and counsel would not 'advance the ends of justice', but instead would invite scorn and disrespect for our rule of law. . . . Under such circumstances the right of a convicted attorney to practice law must succumb to the interests of society to protect and safeguard its legal and judicial systems. . . ." 351 N.E.2d at 745-46.

Reamer relies upon *Louisiana State Bar Association v. Ehmig*, 277 So. 2d 137 (La. 1973), to support his contention that the interim suspension provisions of Rule BV16 constitute a deprivation of due process. That case involved the felony conviction of a lawyer under 26 U.S.C. 7206 (1) (fraud and false statements) for wilfully making a false statement in a document which contained a declaration that it was made under penalties of perjury. The court concluded that there was no overriding public interest justifying a summary suspension proceeding; it said:

> "We find that such emergency action is not appropriate in the case of an attorney who has been convicted of a crime; the public health and safety are not involved to the extent necessary to justify a suspension of his license without a prior hearing." 277 So. 2d at 140.

We think, in accordance with *Mitchell* and contrary to *Ehmig*, that the interest of the public, the legal profession, and the judicial system itself far outweighs the convicted

attorney's interest in continuing to practice law. We think that the interim suspension provisions of Rule BV16 are an appropriate response to society's interest in protecting and safeguarding its legal and judicial systems, and that the rule does not violate any of Reamer's constitutionally protected property or other due process rights.

The requirements of due process are not so specific or technical as to compel adherence to any particular procedure. *Cafeteria Workers v. McElroy,* 367 U. S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961). On the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U. S. 471, 481, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972). In determining the extent to which due process may require a predetermination hearing, three distinct factors should be considered: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U. S. 319, 96 S. Ct. 893, 903, 96 L.Ed.2d 893 (1976).

Applying this "balancing of interests" test (*see Mitchell v. W. T. Grant Co.,* 416 U. S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974)), the basic requirements of due process, for the purposes of this suspension proceeding, were clearly afforded Reamer at his criminal trial. The central question to be decided under Rule BV16 was whether Reamer was convicted of a crime involving moral turpitude. He was given notice and an opportunity to show cause under Rule BV16 why his mail fraud convictions did not involve moral turpitude and justify his interim suspension from the practice of law. No adjudicative facts or questions of credibility were involved in applying the criteria for suspension under the rule. Hence, a separate evidentiary hearing would serve no useful purpose and plainly was not a requirement of due process before suspension could be

ordered. *Mitchell v. Association of Bar of City of N.Y.,
supra.* And, as we have already indicated, the interest of the
convicted attorney in maintaining his practice in such
circumstances is outweighed by the need to maintain public
confidence in the legal profession. As the Supreme Court of
Florida said in *The Florida Bar v. Prior,* 330 So. 2d 697
(Florida 1976):

> "If the law is to be respected, the public must be
> able to respect the individuals who administer it.
> By failing to swiftly discipline an attorney found
> guilty of a serious offense, we necessarily impair
> the public's confidence in the law and in this
> Court's willingness to enforce the law even-
> handedly." *Id.* at 702.

*See also* Note, *Summary Suspension of Attorneys Convicted
of Crime,* 35 La. L. Rev. 212 (1974); American Bar
Association Special Committee on Evaluation of
Disciplinary Enforcement, Problems and Recommendations
in Disciplinary Enforcement (Hon. Tom C. Clark, Chairman
1970); and *Dixon v. Love,* 431 U. S. 105, 97 S. Ct. 1723,
52 L.Ed.2d 172 (1977), upholding the summary suspension of
the driver's license of an individual convicted for offenses
against the traffic laws.

Nor is it a deprivation of due process that the interim
suspension provisions of Rule BV16 operate prior to the
exhaustion of the appellate process. Due process neither
requires nor guarantees appellate review of a criminal
conviction. *Douglas v. California,* 372 U. S. 353, 365, 83 S. Ct.
814, 9 L. Ed. 811 (1963); *Griffin v. Illinois,* 351 U. S. 12, 76 S.
Ct. 585, 100 L. Ed. 891 (1956); *McKane v. Durston,* 153 U. S.
684, 687-88, 14 S. Ct. 913, 38 L. Ed. 867 (1894). In *Mitchell v.
Association of Bar of City of N.Y., supra* (351 N.E.2d at 746),
the court said:

> "Certainly, if appellant was given no right to
> appeal, his judgment of conviction would be final
> for all purposes. Even though appellant here was
> afforded a right to appeal, this judgment of

conviction is entitled equal respect as a final judgment on the merits unless and until reversed upon appeal. Mr. Mitchell has had his day in court, and has had every opportunity to refute the charges made against him. In convicting him, a jury of his peers has credited the testimony of his accusers and rejected whatever defenses and evidence he may have set forth. A strong presumption of regularity attaches to that judgment of conviction. . . . Thus, we are of the view that an attorney convicted of a felony has no constitutional right to practice law pending an appeal of his conviction, any more than any other convicted person has a constitutional right to be at liberty pending an appeal. . . .

"We therefore conclude that appellant has not suffered a deprivation of due process of law by the fact that he has been disbarred during the pendency of an appeal of his conviction of a felony which formed the basis for his disbarment. . . ." (Citations omitted.)

Cases from other jurisdictions are generally in accord with *Mitchell. See Ex parte Alabama State Bar,* 285 Ala. 191, 230 So. 2d 519 (1970); *The Florida Bar v. Prior,* 330 So. 2d 697 (Fla. 1976); *Williford v. State,* 56 Ga. App. 840, 194 S. E. 384 (1937); *In re Minner,* 133 Kan. 789, 3 P. 2d 473 (1931); *In re Lindheim,* 195 App. Div. 827, 187 N.Y.S. 211 (1921).

Reamer relies on *In re Ming,* 469 F. 2d 1352 (7th Cir. 1972), to support his contention that the exhaustion of all direct appeals is constitutionally required before a conviction may be used as a basis for interim suspension. *Ming* involved a federal rule applicable only to misdemeanor charges but nevertheless recognized that there may be instances where a suspension was warranted prior to completion of the appellate process. Clearly, the rule involved in *Ming* is not comparable to Maryland Rule BV16 and, as the Supreme Court of Florida observed in *The Florida Bar v. Prior, supra* (330 So. 2d at 700), the federal court "was only construing its

own rule and was not establishing a federal constitutional guideline."

We, therefore, conclude upon reconsideration of Bar Counsel's petition to suspend Howard G. Reamer from the practice of law, and the answer thereto, that the petition should be granted. Accordingly, we shall suspend Reamer from the practice of law, pursuant to Rule BV16 b, and direct that his name be forthwith stricken from the register of attorneys, in accordance with Rule BV13 a.

*It is so ordered.*