607 A.2d 33

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

Stanley E. PROTOKOWICZ, Jr.

**Misc. Docket (Subtitle BV) No. 26, Sept. Term, 1991.**

Court of Appeals of Maryland.

June 9, 1992.

Eldridge and Robert M. Bell, JJ., filed concurring opinions.

Melvin Hirshman, Bar Counsel and James P. Botluk, Asst. Bar Counsel, argued for Atty. Grievance Com'n of Maryland, petitioner.

Richard M. Karceski, Towson, argued, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

PER CURIAM.

██ The Attorney Grievance Commission here seeks the immediate suspension of Stanley E. Protokowicz, Jr., pursuant to the provisions of Maryland Rule BV16.

Maryland Rule BV16 a 2 provides:

If an attorney is convicted of a crime to which this Rule is made applicable pursuant to Rule BV16 a 1, whether the conviction results from a plea of guilty or of *nolo contendere* or from a verdict after trial, and regardless of the pendency of an appeal or any other post-conviction proceeding, the Bar Counsel shall file charges with the Court of Appeals alleging the fact of the conviction and requesting that the attorney be suspended from the practice of law. A certified copy of the judgment of conviction shall be attached to the charges and shall be *prima facie* evidence of the fact that the attorney was convicted of the crime charged.

Rule BV16 a 1 defines the crimes to which the Rule applies. It includes crimes that are felonies under Maryland law and "any other crime punishable by imprisonment for three years or more."

On 17 January 1992, in the Circuit Court for Harford County, respondent pled guilty to and was convicted of breaking and entering the dwelling house of another, Art.

27, § 31A of the Maryland Code (1957, 1992 Repl.Vol.), and cruelly killing an animal, Art. 27, § 59. He was sentenced to imprisonment for one year on the first count and 90 days on the second count, but the execution of those sentences was suspended, and the respondent was placed on probation for 18 months, with conditions. He was also fined $1,000, and that portion of the sentence was not suspended.

On 12 February, acting pursuant to Rule BV16, the Attorney Grievance Commission filed a petition with this Court asking that respondent be suspended. Respondent, by counsel, filed an answer suggesting that his misconduct "was an isolated aberration of character brought about by an unusual set of circumstances which created tremendous stress and depression ..." and asking that the petition be denied. Attached to the answer was an unsworn and unsigned statement of facts which we are told was prepared by respondent. Petitioner filed a rebuttal to respondent's answer, and we heard argument from the attorneys for both parties.

The purpose of Rule BV16 is to protect the public from acts of an attorney who has been convicted of certain crimes and to maintain public confidence in the legal profession.

In discussing the purpose of disciplinary proceedings, this Court has said:

> [B]ecause 'an attorney's character *must remain beyond reproach,'* this 'Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.'

*Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 528, 340 A.2d 710 (1975) (emphasis in original), quoting *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811

(1974). Similarly, we said in *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 332–33, 379 A.2d 171 (1977), that the interest of the public, the legal profession, and the judicial system itself far outweighs the convicted attorney's interest in continuing to practice law. We think that the interim suspension provisions of BV16 are an appropriate response to society's interest in protecting and safeguarding its legal and judicial systems....

Other courts have taken a similar view of the purposes supporting interim suspensions. *See, e.g., United States v. Jennings,* 724 F.2d 436, 449–50 (5th Cir.1984) ("allowing a lawyer to practice pending appeal of a criminal conviction not only affects the public's appraisal of the legal profession, but also the interests of individual clients"); *State Bar of Tex. v. Heard,* 603 S.W.2d 829, 834 (Tex.1980) ("[a]n attorney who is convicted of the enumerated crimes cannot hold the confidence of the public or the profession as long as the conviction stands"); *United States v. Friedland,* 502 F.Supp. 611, 614–18 (D.N.J.1980), *aff'd,* 672 F.2d 905 (3d Cir.1981) (purposes of interim suspension are protection of public and preservation of integrity and reputation of the profession).

Standard 2.4 of The Standards for Imposing Lawyer Sanctions, developed by the American Bar Association Joint Committee on Professional Standards and adopted by the ABA House of Delegates, provides as follows concerning interim suspensions:

> Interim suspension is the temporary suspension of a lawyer from the practice of law pending imposition of final discipline. Interim suspension includes:
>
> (a) suspension upon conviction of a 'serious crime' or,
>
> (b) suspension when the lawyer's continuing conduct is or is likely to cause immediate and serious injury to a client or the public.

The commentary to that Standard states, in part:

> Interim suspension is necessary in [cases involving convictions of serious crimes] both to protect members of the

public and to maintain public confidence in the legal profession. As explained in the commentary to Standard 6.5, it is difficult for members of the public to understand why a lawyer who has been convicted of stealing funds from a client can continue to handle client funds. Public confidence in the profession is strengthened when expedited procedures are available in such instances of lawyer misconduct.

Although the convictions in this case are not for stealing, the conviction of breaking and entering is a "serious crime" within the definition of Rule BV16 a, because it is a "a crime punishable by imprisonment for three years or more."

Prior to 1 July 1978, the test of whether a crime for which an attorney had been convicted was sufficiently serious to support an interim suspension was whether it was "a crime involving moral turpitude." *See Attorney Grievance Comm'n v. Reamer, supra,* 281 Md. at 325, 379 A.2d 171. In *Reamer* and in earlier cases, this Court wrestled with the sometimes elusive concept of what constitutes a crime involving moral turpitude, and largely because of the difficulties inherent in applying that definition the Court changed the rule to its present form, effective 1 July 1978. *See Attorney Griev. Comm'n v. Klauber,* 283 Md. 597, 600, 391 A.2d 849 (1978). Accordingly, we have for the last 14 years recognized that a crime punishable by imprisonment for three years or more is sufficiently serious to justify an interim suspension.

■ As respondent points out, Rule BV16 authorizes an interim suspension; it does not mandate such action. This Court does, therefore, consider the relevant circumstances surrounding the conviction before deciding whether suspension is appropriate.

■ The crime of breaking and entering the dwelling house of another is a misdemeanor. To convict for this offense the State need not prove an intent to commit a crime within the dwelling house. The State must, however, show a general criminal intent, i.e., that the actor was

aware that he was making an unwarranted entry. *Warfield v. State*, 315 Md. 474, 498, 554 A.2d 1238 (1989). The maximum penalty for the commission of this crime is imprisonment for a term of not more than three years; thus, the offense qualifies as a serious offense under Rule BV16. These factors, standing alone, may suggest that an interim suspension would be inappropriate in a variety of circumstances surrounding a conviction of this offense. The facts surrounding this conviction, however, lead to no such conclusion.

At the time of the incident in this case, respondent was a roommate of Thomas Sanders. Both men were separated from their wives. Respondent had earlier represented Sanders in his divorce action, but had withdrawn his appearance following a hearing on Mrs. Sanders' motion to have respondent disqualified because of an alleged conflict of interest. Bar Counsel alleges:

> The Respondent and Mr. Sanders broke into Mrs. Sanders' home to take a stock certificate claimed by Mr. Sanders. Mrs. Sanders' toilet was stopped up and her contraceptive devices were placed on the bathroom floor. A photograph of Mrs. Sanders and her daughter was turned on its side. The Respondent allegedly stole and read Mrs. Sanders' personal letters. During the break-in, the Respondent advised his former client that he could remove marital property from Mrs. Sanders' residence. The Respondent assisted his former client with the theft of Mrs. Sanders' jewelry and other personal property. The Respondent took a bottle of champagne from Mrs. Sanders' refrigerator and spilled the champagne on the floor.

Bar Counsel further advises that

> [a]t a deposition of the Respondent taken in the Sanders' divorce case in September, 1991, the Respondent testified at length regarding his dislike of Mrs. Sanders.

Respondent says that at the time of the incident he was severely depressed because of the death of a close friend, the breakup of his marriage, and a condition of high blood

pressure. He states that he began to abuse alcohol after he separated from his wife in September, 1991, and that he had been drinking heavily before entering Mrs. Sanders' home during the early morning hours of 14 October 1991. He characterized the unlawful entry as "more than a drunken lark" but said he intended no harm. He admitted drinking champagne he "found" in the refrigerator and said that due to sloppiness he spilled the champagne in several places, including on the kitchen floor.

When Mrs. Sanders and her children returned to their home they found their pet cat dead on the kitchen floor, either in a puddle of champagne or covered with champagne. The cause of the cat's death was not known for several months, and became known only when respondent admitted in a statement to prosecuting authorities that he had killed the cat by placing it in a microwave oven and activating the oven. It was for this conduct that the State charged, and the respondent admitted by his plea, that the respondent "unlawfully did cruelly kill and cause to be killed one feline" in violation of Art. 27, § 59 of the Maryland Code.

Having fully considered the surrounding circumstances of the offense as established by facts not in dispute, and having considered the purposes of Rule BV16, we are persuaded that the petition of the Attorney Grievance Commission should be granted. Accordingly, we direct that Stanley E. Protokowicz, Jr. be immediately suspended from the practice of law in this State.

IT IS SO ORDERED.

ELDRIDGE and ROBERT M. BELL, JJ., concur and file opinions.

ELDRIDGE, Judge, concurring.

While I concur in the result, I do not agree with all that is set forth in either the majority opinion or in Judge Bell's concurring opinion. The majority has clearly departed from the interpretation and application of Rule BV16 which had

been adhered to in our prior opinions and orders. In particular, the majority has expanded the purpose of the interim suspension rule without explaining why this departure from our prior cases is warranted.

With respect to the purpose of the interim suspension provisions of Rule BV16, the majority states as follows (at 716, emphasis added):

> "The purpose of Rule BV16 is to protect the public from acts of an attorney who has been convicted of certain crimes *and to maintain public confidence in the legal profession.*"

While the maintenance of public confidence in the legal profession is clearly a purpose of the ultimate sanction imposed upon an attorney at the conclusion of the disciplinary proceedings, it has not been regarded as a purpose underlying the interim suspension provisions of Maryland Rule BV16. The majority, in support of its statement of purpose, quotes *Bar Ass'n of Balto. City v. Siegel,* 275 Md. 521, 528, 340 A.2d 710, 714 (1975); *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974); and *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 332–333, 379 A.2d 171, 177 (1977). Neither the *Siegel* case nor the *Agnew* case involved Rule BV16 or an interim suspension. The quoted language from those cases related to the ultimate sanction of disbarment imposed at the conclusion of the disciplinary proceedings. The quoted language from the *Reamer* case concerned constitutional due process challenges to summary suspension proceedings; it did not relate to the nonconstitutional issue of the specific purpose of Maryland Rule BV16.

The sole purpose of the interim suspension rule when it was originally adopted by this Court was to protect the public from the attorney during the often substantial time lapse after the criminal conviction in the trial court but before both the ultimate conclusion of the criminal case (including appeals) and the completion of the disciplinary proceedings. In several cases where the public did not need protection during such period of time, either because the

attorney did not pose a danger to the public or because this Court could substantially shorten the time lapse by expediting the criminal appeal, motions for interim suspensions were denied by orders of this Court.

The purpose of Rule BV16 was specifically explained in our reported opinion in *Attorney Griev. Comm'n v. Andresen,* 279 Md. 250, 253–254, 367 A.2d 1251, 1253 (1977). Judge Marvin Smith there stated for the Court:

"The reason for the adoption of Rule BV16 relative to suspension of an attorney upon conviction is to protect the public from acts of that attorney pending a determination of the propriety of his conviction and, in the event of an affirmance of that conviction ..., the ultimate determination by this Court of whether the attorney should be disciplined and, if so, the form of the discipline to be imposed."

Although I am not persuaded that the purpose of Rule BV16 should now be expanded, I do believe that an interim suspension of the respondent, under the Rule as construed in *Andresen,* is warranted. An attorney who engages in the particular type of conduct disclosed by the respondent's conviction of breaking and entering and by his admissions may well pose a danger to the public pending the completion of the disciplinary proceedings. For this reason, I concur in the suspension under Rule BV16.

ROBERT M. BELL, concurring.

The respondent having been convicted of breaking and entering, Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 31A, and cruelty to animals, Art. 27, § 59, the Court has ordered his immediate suspension from the practice of law pending completion of disciplinary proceedings.[1] To reach this result, the Court considered "the surrounding circum-

---

1. Cruelty to animals is not an interim suspension eligible offense. Its maximum penalty is a fine not to exceed $1000.00 or imprisonment not to exceed 90 days, or both, rather than three years or more as required by Maryland Rule BV16a1.

stances of the offense as established by facts not in dispute and the purposes of BV 16." At 720.

### I.

Proceedings for the interim suspension of an attorney convicted of crime are but a part of disciplinary proceedings initiated "to determine whether the crime warrants discipline and if so, the extent thereof." Rule BV16c. Before an interim suspension may be ordered, Bar Counsel must "file charges with the Court of Appeals alleging the fact of conviction and requesting that the attorney be suspended from the practice of law." BV16a2. *Prima facie* evidence of the conviction is supplied by attaching a certified copy of the judgment of conviction to the "charges." *Id.* The filing of charges triggers the issuance by the Court of an order requiring the attorney to show cause why he or she should not be suspended. The decision whether an interim suspension should be ordered is made on the basis of the "charges" and the answer. BV16b.

BV16c contemplates that a similar process to that required in other disciplinary proceedings[2] will apply to the proceedings based upon conviction of a serious crime: charges must be filed, *see* Rule BV9; an evidentiary hearing must be conducted by a judge, BV10; and, providing for the filing of exceptions, a hearing may be held in this Court. BV11.

The decision to suspend on an interim basis must be made on the basis of the fact of conviction, the nature of the crime and any judicial admission the lawyer might make, including his or her response. An interim suspension, then, is a "preliminary matter" to be resolved "without a full record," *Attorney Griev. Comm'n v. Klauber,* 283 Md. 597,

---

**2.** Proceedings arising from a conviction of a serious crime exclude the Inquiry Panel and the Review Board steps. See BV6b(1) and BV7. Thus, the requirement, in BV9a, that charges be filed as directed by the Review Board is inapplicable.

600, 391 A.2d at 849, 851 (1978) or a hearing on the merits; hence, it is in the nature of an emergency measure. Moreover, because the attorney's livelihood is at stake, if only temporarily, the action must be person specific.

The majority states that "[t]he purpose of BV16 is to protect the public from acts of an attorney who has been convicted of certain crimes and to maintain public confidence in the legal profession." [At 716] Then, citing pre–1978 cases, out-of-state authority, and one of the standards for imposing lawyer sanctions adopted by the ABA House of Delegates, it suggests that protecting the public and maintaining public confidence in the legal profession are independent purposes and, indeed, that, in the context of interim suspension proceedings, the latter may have a significance at least as important as the former. To demonstrate why it is necessary to suspend in order to protect the image of the bar, the Court refers to the "surrounding circumstances of the offense as established by facts not in dispute."

An interim suspension, because it is a temporary measure pending completion of disciplinary proceedings, *i.e.*, a preadjudication suspension, must have as its primary purpose the protection of the public. In my opinion, the decision to order an interim suspension may only be made after answering the questions whether, and if so, how, the conviction reflects adversely on the lawyer's fitness to practice law. In answering those questions, the court may consider how the public would perceive that lawyer's fitness to continue to practice law despite the conviction; that consideration informs the fitness inquiry, rather than the decision to suspend on an interim basis. The public perception of the fitness to practice of a particular lawyer, who has been convicted of crime, is different from the public perception of the profession. The latter is part of the broader purpose of disciplinary proceedings, which is triggered when the ultimate disciplinary decision is made. It is not, and should not be, a consideration in the decision to interim suspend in the public interest; public confidence in *the profession is a*

consideration only in the ultimate disciplinary decision rendered after a full hearing on the merits.

Before 1978, BV16 provided for the interim suspension of an attorney only if he or she had been convicted in any judicial tribunal of a crime involving moral turpitude. *Klauber*, 283 Md. at 598, 391 A.2d at 850. *See also Attorney Grievance Commission v. Reamer*, 281 Md. 323, 331, 379 A.2d 171, 176 (1977); *Attorney Grievance Commission v. Andresen*, 279 Md. 250, 252, 367 A.2d 1251, 1252 (1977). While this Court made clear that, in such circumstances, suspension is not mandatory, *see Klauber*, 283 Md. at 599–600, 391 A.2d at 851, the cases in which interim suspension was sought focused on whether the crime of which the lawyer was convicted, in fact, involved moral turpitude. That determination in a given case was dispositive of the suspension issue. In *Klauber*, we said:

> Since suspension under Rule BV16, as it was then worded, could occur only upon conviction of a crime involving moral turpitude and, under the same rule, we were dealing with suspension as a *preliminary* matter, without a full record, we held as we did in *Reamer* because our *preliminary* determination awaited *final* resolution of the moral turpitude issue upon appellate review of the conviction. It was our intention in *Reamer* under the rule as then existed to make plain that we would not—and should not—suspend unless it was absolutely clear that the crime involved moral turpitude. (emphasis in original)

283 Md. at 600, 391 A.2d at 851. In *Andresen*, we noted that

> [t]he reason for the adoption of Rule BV16 relative to suspension of an attorney upon conviction is *to protect the public from acts of that attorney pending a determination of the propriety of his conviction and, in the event of an affirmance of that conviction involving a crime of moral turpitude, the ultimate determination by this Court of whether the attorney should be disci-*

*plined* and, if so, the form of the discipline to be imposed. (emphasis added)

279 Md. at 253–54, 367 A.2d at 1253.

The definitional complexity aside, *Klauber,* 283 Md. at 600, 391 A.2d at 851, determining whether a conviction was of a crime involving "moral turpitude" struck a balance between the recognized need to protect the public from unscrupulous and morally deficient lawyers, the paramount aim of disciplinary proceedings, *Attorney Griev. Comm'n v. Kerpelman,* 323 Md. 136, 149, 591 A.2d 516, 523 (1991); *Attorney Griev. Comm'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Griev. Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989); *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 682, 431 A.2d 1336, 1351 (1981), and the need to maintain the integrity of the bar in order to protect its image. *See Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974); *Braverman v. Bar Ass'n of Baltimore,* 209 Md. 328, 349, 121 A.2d 473, 483 (1956).

Crimes involving moral turpitude include those "in which an intent to defraud is an essential element." *Reamer,* 281 Md. at 326, 379 A.2d at 173; *Bar Association of Baltimore City v. Siegel,* 275 Md. 521, 524, 340 A.2d 710, 712 (1975); *Agnew,* 271 Md. at 546–47, 318 A.2d at 813; *Rheb v. Bar Association of Baltimore,* 186 Md. 200, 204–05, 46 A.2d 289, 291 (1946). Thus, before 1978, we looked, not to the classification of the offense by the Legislature, or even to the public's likely perception of one who committed it, but to what conviction of that particular crime implied about its perpetrator's character and, hence, his or her fitness to practice law. The honesty of a lawyer is implicated when that lawyer is convicted of a crime characterized by an intent to defraud. And a dishonest lawyer who is permitted to continue to practice law despite the conviction places the public at risk. By focusing on "moral turpitude," we sought to predict those character traits inimical to the practice of law in order that prophylactic measures, includ-

ing interim suspension, could be taken in the public interest, in advance of the completion of the disciplinary proceedings.

When in 1978, BV16 was amended, the reference to "moral turpitude" was deleted and the number of crimes for the conviction of which a lawyer could be suspended on an interim basis was expanded. There is no evidence, however, that, by that amendment, we intended to change our approach to interim suspensions—that we intended to abandon the heretofore acknowledged purpose of interim suspensions. *See Andresen, supra,* 279 Md. at 253–54, 367 A.2d at 1253. It is not at all evident to me that, by making the amendment, this Court expressed an intention that protecting the image of the profession would be sufficient reason temporarily to suspend a lawyer quite apart from the character implications of the suspension eligible offense, *i.e.,* whether or not the crime suggests that he or she was an unscrupulous lawyer, from whom protection is necessary during the pendency of either an appeal or the completion of disciplinary proceedings.

There are a number of offenses that carry a penalty of less than three years, so that a lawyer convicted of them would not be eligible for interim suspension even though, from the perspective of the public, these convictions are more damaging to the profession's reputation than some interim suspension eligible offenses. Crimes such as fourth degree sexual offense under Art. 27, § 464c [3]; bribery of voters under Art. 27, § 28; extortion by false accusation of a crime under Art. 27, § 563; improper use of simulated court process under Art. 27, § 199; theft under $300 under Art. 27, § 342; cruelty to animals, and drunk driving, including a second offense, *see* Maryland Code (1974, 1987 Repl.Vol., 1991 Cum.Supp.) § 27–101(k) of the Transportation Article, to name just a few, all carry a maximum penalty under three years and, yet, in the event that a lawyer is convicted of one of them, the public is likely to

---

**3.** All references, except as otherwise indicated, are to Maryland Code (1957, 1992 Repl.Vol.).

react more vehemently and insist more readily that he or she be suspended than in the case of many of the misdemeanors punishable by imprisonment for more than three years.

Conviction of some of those crimes says a great deal about the convicted lawyer's character and, therefore, his or her fitness to practice law. Thus, a lawyer convicted of theft under $300 could not be suspended on an interim basis despite having demonstrated a character flaw, *e.g.*, dishonesty, that, were he or she applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. *See Fellner v. Bar Association*, 213 Md. 243, 247, 131 A.2d 729, 132 (1957). This is to be contrasted with a conviction for a very minor assault; because the penalty for assault may exceed three years, the lawyer could be suspended during the pendency of disciplinary proceedings.

If protecting the image of the bar is an overriding, independent purpose of Rule BV16, then there simply is no justification for drawing a distinction between convictions which could result in a sentence of three years or more and those that cannot. The image of the profession is tarnished to some degree whenever a lawyer is convicted of an offense—any offense. The public does not consider differences in prescribed penalties as particularly significant; it looks to the conduct which the conviction encompasses and draws its conclusion from that.[4]

---

4. In this case, the respondent was convicted, along with his former roommate of breaking and entering the home of his accomplice's wife. Bar Counsel alleges that the respondent did more than simply break and enter: he participated with his accomplice in the breaking and entering in order to "take" a stock certificate the accomplice claimed was his, he "stole," as well as read, the victim's personal letters, he advised his accomplice as to the removal of property from the house, and he assisted his accomplice in taking jewelry and other property. Such conduct, if proved, is reprehensible, because it is both the sort that this Court cannot condone and about which the general public would justifiably be concerned, especially when the lawyer is

Protecting the public from this lawyer, then, requires that we consider a convicted lawyer's fitness to practice law, either from the standpoint of technical skills or morality. *Rheb*, 186 Md. at 205, 46 A.2d at 291. *See also In Re: Meyerson*, 190 Md. 671, 676, 59 A.2d 489, 490–91 (1947). The legal profession is a "public calling that specially invites complete trust and confidence." *Rheb*, 186 Md. at 205, 46 A.2d at 291. It is the task of this Court to ensure that the highest standards of professional conduct are upheld and that the public is protected from both the unfit and the unscrupulous, whether or not those traits are revealed in the course of practicing law. While the public's perception of the fitness of a particular lawyer to practice may be relevant in this context, where there is no, or little, connection between the elements of the crime of which the lawyer has been convicted and those character traits or skills deemed necessary to the ethical practice of law, interim suspension will constitute *naked* punishment, an early imposition of the penultimate sanction, which does not advance the purpose of the Rule at all.

Preservation of the bar's image is not an independent *raison d'être* for interim suspension under Rule BV16. An aspect of it is however, indirectly relevant to the Rule's purpose of protecting the public from the unfit and, more particularly, unscrupulous practitioner; in determining a convicted lawyer's fitness to practice law, a court may legitimately consider whether a conviction that indicates that a lawyer has a character flaw which is inimical to the ethical practice of law will cause public concern about that lawyer's fitness to continue practicing law. But it is what the conviction portends, not the public perception, that necessitates the extreme sanction of interim suspension. The cases cited by the majority say no more. Thus, the

---

permitted to continue his practice, seemingly immune from punishment. But, even considering these allegations, it is still the character trait that the conduct surrounding the crime portends that is the cause for concern, not simply the fact that the respondent was convicted of breaking and entering.

emphasis in *Siegel* was on the requirement that an attorney's character remain beyond reproach. The profession's image was mentioned only in that context. 275 Md. at 528, 340 A.2d at 714. *Reamer*, which involved an attorney convicted of a crime involving moral turpitude, is to like effect.

ABA Standard 2.4, subsection (b) is explicit in its statement that it is "the lawyer's continuing conduct" that must cause or be likely to cause "immediate and serious injury to a client or the public." That its focus is on character traits implicated by the conviction is buttressed by the commentary to that standard.

In *United States v. Friedland*, 502 F.Supp. 611, 615–16 (D.N.J.1980), *aff'd*, 672 F.2d 905 (3rd Cir.1981), the suspended lawyers had been convicted of seven federal felonies, each involving fraud in one form or another. Consistent with the court's practice, they were suspended pending conclusion of disciplinary proceedings and that order was confirmed after challenge. In the course of the opinion, the court referred with favor to that portion of the Model Federal Rules of Disciplinary Enforcement approved by the Judicial Conference of the United States on September 21, 1978, that permitted suspension of an attorney convicted of a "serious crime," and to its definition. "Serious crime" was defined as including "any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involves false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a 'serious crime.'" The lawyer in *State Bar of Texas v. Heard*, 603 S.W.2d at 829 (Tex.1980) was suspended, pending appeal, following conviction for conspiracy to commit mail fraud and multiple substantive counts of mail fraud. The statute which was the basis for the suspension referenced "any felony involving moral turpitude ... or any misdemeanor involving the theft, embezzlement, or fraudu-

lent misappropriation of money or other property." 603 S.W.2d at 831. Finally, the crimes for which the attorney in *United States v. Jennings* was convicted and on the basis of which he was suspended were "plainly felonies involving moral turpitude." 724 F.2d 436, 448 (5th Cir.1984). It is in the context of the crimes of which the attorneys were convicted that the remarks cited by the majority must be construed. When that is done, it is clear that it is the interconnection between the character of the attorney, *i.e.* his fitness to practice law, as revealed by the conviction, and the perception of the public that caused those courts to refer to the purpose of interim suspension in terms of protecting the public *and* protecting the profession's image.

## II.

As indicated, the decision to suspend on an interim basis must be made on the basis of the fact of conviction, the nature of the crime, and any judicial admissions made by the attorney. It may not be based on the facts alleged by bar counsel to aggravate the particular conviction. Facts that are not necessarily evident from the conviction itself should not be taken as proven, unless, of course, the respondent admits them. Thus, ordinarily, it will be the nature of the crime, *i.e.*, what the elements of the crime tell us about the attorney's character and, hence, the need to protect the public, that will direct our decision.

In this case, the majority notes that a conviction for the crime of breaking and entering under Art. 27, § 31A "standing alone, may suggest that an interim suspension would be inappropriate in a variety of circumstances surrounding a conviction of this offense." [At 719] It then proceeds to consider "the surrounding circumstances of the offenses as established by facts not in dispute" and, on that basis, to order an immediate suspension.

I do not disagree with the majority as to what may be considered in the interim suspension decision. Because the majority quotes a number of Bar Counsel's allegations,

none of which, unadmitted, may be considered,[5] I set forth why I concur in the judgment. The respondent's answer, in particular the statement attached to it, in addition to mitigating matters, admits the breaking and entering, the purpose of which was to retrieve a document claimed by his accomplice, the cruelty charge, taking and drinking, without permission, champagne he found in the refrigerator, spilling champagne in various places in the house, including the kitchen floor, and killing the cat during the B & E. At oral argument, the respondent's counsel acknowledged the removal of papers and a piece of jewelry from the house. These admissions are enough to justify an interim suspension. A lawyer who participates in a breaking and entering knowing that its purpose is to "take" property and, in addition, himself "takes" and consumes personal property belonging to the occupant of the house, without permission, does more than simply breaks and enters; that lawyer breaks and enters with intent to steal as well as breaks and enters *and* steals. The crime that the respondent was convicted of coupled with the surrounding circumstances which he admits reflect adversely on the respondent's fitness to practice law, warranting interim suspension.

---

5. BV16c contemplates the development, at the evidentiary hearing, of the facts surrounding the conviction and consideration of whether the mitigating circumstances presented by the attorney actually exist and are credible. Thus, the evidentiary hearing is for the purpose of determining the culpability of the attorney beyond the bare elements of the crime. In this case, the hearing court must decide whether, as Bar Counsel alleges: the respondent broke and entered the house for the purpose of assisting his accomplice to "steal" a stock certificate; the respondent participated in stopping up the toilet and placing contraceptive devices on the bathroom floor; the respondent moved his accomplice's wife's photograph; the respondent "stole and read" personal letters; the respondent advised his accomplice that he could remove marital property from the house; and the respondent assisted in the theft of jewelry and other personal property. Moreover, it is for the hearing judge to decide, based on the evidence that will be presented at that hearing, whether the respondent harbored ill-feelings toward his accomplice's wife and what role it played in the B & E. Unless the hearing court is permitted to perform its function prior to using the allegations, there simply is no reason for further disciplinary proceedings, after the interim decision has been made.