IN THE SUPREME COURT

OF MARYLAND

AG No. 25

September Term, 2023

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MARILYN J. MOSBY

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

PER CURIAM ORDER
Dissenting Opinion by Gould, J., which
Biran, J., joins.

_____

Filed: July 5, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MARILYN J. MOSBY

    \*      IN THE

    \*      SUPREME COURT

    \*      OF MARYLAND

    \*      AG No. 25

    \*      September Term, 2023

ORDER

Upon consideration of:

(1) Petitioner, Attorney Grievance Commission of Maryland's Amended Petition for Disciplinary or Remedial Action and Request for Immediate Suspension filed on February 7, 2024 ("Petition");

(2) Respondent, Marilyn J. Mosby's Motion to Strike & Request for Hearing filed on May 3, 2024, in which Respondent moves to strike the superseding indictment referenced in, and attached as an exhibit to, the Petition;

(3) Respondent's Response to Show Cause Order & Opposition to the Request for Immediate Suspension filed on May 3, 2024, in which Respondent states that she "intends to present evidence in support of a disposition other than disbarment";

(4) Petitioner's Notification of Conviction and Response to Respondent's Motion to Strike filed on May 24, 2024, and May 28, 2024, respectively;

(5) Respondent's additional Opposition to the Request for Immediate Suspension filed on June 11, 2024, in which Respondent reiterates that she "intends to present evidence in support of a disposition other than disbarment"; and

(6) Respondent's Line: Notification of Appeal filed on June 12, 2024, in which Respondent advises that she has appealed the convictions that are the subject of the Petition;

it is this 5th day of July 2024, by the Supreme Court of Maryland, a majority of the Court concurring,

ORDERED, that Respondent's motion to strike the superseding indictment from the Petition is denied; and it is further

ORDERED, pursuant to Maryland Rule 19-738(g), that the Honorable Yvette M. Bryant is designated as a hearing judge pursuant to Maryland Rule 19-722 to hold a hearing in accordance with Maryland Rule 19-727; and it is further

ORDERED, pursuant to Maryland Rule 19-738(h)(2), that the hearing shall be delayed until the completion of appellate review; and it is further

ORDERED, that the request for immediate suspension of Respondent from the practice of law in Maryland is denied without prejudice.



                         /s/ Shirley M. Watts
                              Senior Justice

IN THE SUPREME COURT

OF MARYLAND

AG No. 25

September Term, 2023
_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MARILYN J. MOSBY
_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,

JJ.
_____

Dissenting Opinion by Gould, J., which
Biran, J., joins.
_____

Filed: July 5, 2024

Respondent, Marilyn J. Mosby, was elected as the State's Attorney for Baltimore City in 2014 and was re-elected in 2018. As a public servant, Ms. Mosby was eligible to participate in the deferred compensation plan offered by the City of Baltimore under 26 U.S.C.A. § 457(b) ("457(b) plan"), and she did. [1]

On March 27, 2020, in response to the coronavirus epidemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (2020 ("CARES Act"). Among other things, the CARES Act offered favorable tax treatment for distributions to qualified individuals made from eligible retirement plans, including 457(b) plans, during the pandemic. Such treatment included waiver of the 10 percent penalty otherwise imposed on early withdrawals.

In 2020, Ms. Mosby directed two requests, roughly six months apart, to the City's Deferred Compensation plan administrator for early withdrawals under the CARES Act, resulting in distributions of $36,000 and $45,000. The forms for the request were provided by the plan administrator. Among other things, the forms stated the following:

**Participant Coronavirus Certification and Distribution Authorization**

The Coronavirus Aid, Relief and Economic Security Act of 2020 ("CARES Act") was signed into law on March 27, 2020. The CARES Act permits qualifying members to receive a coronavirus-related distribution. I

---

[1] A 457(b) plan can be offered only by state and local governments and certain non-profit organizations and is subject to many regulations under the Internal Revenue Code. The employee's contribution to a 457(b) plan reduces their taxable income and accumulates tax-free until the monies are withdrawn. 26 U.S.C.A. § 457(a)(1). Generally, the employee can access the funds in the 457(b) plan without penalty upon retirement or changing employers. *Id.* § 457(d). Otherwise, unless there is an unforeseen financial emergency as defined in regulations, an early withdrawal is subject to a ten percent penalty in addition to income tax. *See id.* § 72(t); Reg. Section 1.457-6(c)(2)(i).

understand that I may receive a distribution of up to $100,000 if I am a qualified individual. By making this request, I acknowledge that the amount of coronavirus-related distribution(s) which I may obtain from The City of Baltimore Deferred Compensation Plan is limited to the amount of $100,000 and that I am not exceeding this limit. I further acknowledge that the City of Baltimore Deferred Compensation Plan is relying on my certifications in determining that I qualify for a coronavirus-related distribution and that I will not exceed the applicable limit.

By signing this form, I certify that I meet at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4) summarized below: (check one)

To demonstrate her eligibility, Ms. Mosby certified that she "experienced adverse financial consequences stemming from [coronavirus] as a result of:

- Being quarantined, furloughed or laid off
- Having reduced work hours
- Being unable to work due to lack of child care
- The closing or reduction of hours of a business I own or operate

And Ms. Mosby signed the form for both requests under an acknowledgment that stated:

I consent to a distribution as elected above and affirm under penalties for perjury the statements and acknowledgements made in the request. I understand that the terms of the planned document will control the amount and timing of any payment from the plan.

In November 2023, after a seven-day jury trial in the United States District for the District of Maryland, Ms. Mosby was found guilty of two counts of perjury. One count was based on her signature on the first withdrawal form and the other was based on the second. That verdict prompted the Attorney Grievance Commission to file a Petition for Disciplinary or Remedial Action and Request for Immediate Suspension against her.

2

In a separate 12-day jury trial in January and February 2024, Ms. Mosby was found guilty of "making a false statement to a mortgage lending business relating to" a second vacation home she purchased in Long Boat Key, Florida. The jury found that "Ms. Mosby falsely stated in a February 2021 letter that her husband 'made a gift of $5,000 to be transferred AT CLOSING.'" This guilty verdict prompted the Attorney Grievance Commission to file an Amended Petition for Disciplinary or Remedial Action and Request for Immediate Suspension.

On May 23, 2024, Ms. Mosby was sentenced as follows:

### IMPRISONMENT

The defendant is to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **TIME SERVED as to Count 1 of the Superseding Indictment, TIME SERVED as to Count 3 of the Superseding Indictment, and TIME SERVED as to Count 4 of the Superseding Indictment, with all counts to run concurrently for a total of TIME SERVED.**

**\*\*\*\***

### SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **3 years as to Count 1 of the Superseding Indictment, 3 years as to Count 3 of the Superseding Indictment, and 3 years as to Count 4 of the Superseding Indictment, with all counts to run concurrently for a total of 3 years.**

Maryland Rule 19-738 governs disciplinary proceedings stemming from the conviction of a crime.[2] The Attorney Grievance Commission contends that Ms. Mosby

_____

[2] Rule 19-738 provides:

**(a) Definition.** In this Rule, "conviction" includes (1) a judgment entered upon acceptance by the court of a plea of guilty, conditional plea of guilty, or nolo contendere and (2) a criminal matter in which a probation before judgment is entered by the trial court, regardless of whether the probation before judgment is predicated upon a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere or upon a finding of guilt by a trier of fact after a trial on the merits.

**(b) Duty of Attorney.** An attorney charged with a serious crime in this State or any other jurisdiction shall promptly inform Bar Counsel in writing of (1) the filing of the charge, (2) any finding or verdict of guilty on such charge, (3) the entry of a judgment of conviction or a probation before judgment on such charge, and (4) the final disposition of the charge in each court that exercised jurisdiction over the charge.

**(c) Petition for Disciplinary or Remedial Action.**

(1) *Petition Upon Conviction.*

(A) Upon receiving and verifying information from any source that an attorney has been convicted of a serious crime, Bar Counsel may file a Petition for Disciplinary or Remedial Action pursuant to Rule 19-721 (a)(2). The petition may be filed whether an appeal or any other post-conviction proceeding is pending.

(B) Contents. The petition shall allege the fact of the conviction and include a request that the attorney be suspended immediately from the practice of law. A certified copy of the judgment of conviction or a certified copy of the transcript reflecting the conviction shall be attached to the petition and shall be prima facie evidence of the fact that the attorney was convicted of the crime charged.

(2) *Petition When Imposition of Sentence is Delayed.*

(A) Generally. Upon receiving and verifying information from any source that an attorney has been found guilty of a serious crime but that sentencing has been delayed for a period of more than 30 days, Bar Counsel may file a Petition for Disciplinary or Remedial Action pursuant to Rule 19-721 (a)(2). The petition may be filed whether or not a motion for new trial or other relief is pending.

(B) Contents. The petition shall allege the finding of guilt and the delay in sentencing and request that the attorney be suspended immediately from the practice of law pending the imposition of sentence and entry of a judgment of conviction. Bar Counsel shall attach to the petition a certified copy of the docket reflecting the

4

finding of guilt or a certified copy of the transcript reflecting the finding of guilt, which shall be prima facie evidence that the attorney was found guilty of the crime charged.

(C) Notification to the Supreme Court. Upon the imposition of sentence and entry of a judgment of conviction, Bar Counsel shall inform the Supreme Court and attach a certified copy of the judgment of conviction or a certified copy of the transcript reflecting the conviction.

**(d) Show Cause Order.** When the petition demonstrates that an attorney has been found guilty or convicted of a serious crime, the Supreme Court shall order that the attorney, within 15 days from the date of the order, show cause in writing why the attorney should not be suspended immediately from the practice of law until the further order of the Supreme Court.

**(e) Temporary Suspension of Attorney.** Upon consideration of the petition and the answer to the order to show cause, the Supreme Court may enter an order immediately suspending the attorney from the practice of law, pending further order of the Court, or enter an order containing any other appropriate provisions. The provisions of Rules 19-741 and 19-743, as applicable, apply to an order suspending an attorney under this section.

**(f) Termination of Temporary Suspension.** On notification by Bar Counsel or the attorney that the conviction was reversed, the Supreme Court shall vacate the order of temporary suspension, unless other grounds exist for the suspension to remain in effect.

**(g) Action by the Supreme Court.** When a petition filed pursuant to section (c) of this Rule alleges the conviction of a serious crime and the attorney denies the conviction or intends to present evidence in support of a disposition other than disbarment, the Supreme Court may (1) immediately suspend the attorney, (2) enter an order designating a judge pursuant to Rule 19-722 to hold a hearing in accordance with Rule 19-727, or (3) enter any other appropriate order. The provisions of Rules 19-741 and 19-743 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

**(h) Time for Holding a Hearing.** If, pursuant to section (g) of this Rule, the Court designates a judge to hold a hearing, the hearing shall be scheduled as follows:

5

(1) *No Appeal of Conviction.* If the attorney does not appeal the conviction, the hearing shall be held within a reasonable time after the time for appeal has expired.

(2) *Appeal of Conviction.* If the attorney appeals the conviction, the hearing shall be delayed, except as provided in section (h)(4) of this Rule, until the completion of appellate review.

(A) If, after completion of appellate review, the conviction is reversed or vacated, the judge to whom the action is assigned shall either dismiss the petition or hear the action on the basis of evidence other than the conviction.

(B) If, after the completion of appellate review, the conviction is not reversed or vacated, the hearing shall be held within a reasonable time after the mandate is issued.

(3) *Effect of Incarceration.* If the attorney is incarcerated as a result of the conviction, the hearing shall be delayed until the termination of incarceration unless the attorney requests an earlier hearing and makes all arrangements (including financial arrangements) to attend the hearing or waives the right to attend.

(4) *Right to Earlier Hearing.* If the hearing on the petition has been delayed under subsection (h)(2) of this Rule and the attorney has been suspended from the practice of law under section (e) of this Rule, the attorney may request that the judge to whom the action is assigned hold an earlier hearing, at which the conviction shall be considered a final judgment.

**(i) Conclusive Effect of Final Conviction.** In any proceeding under this Chapter, a final judgment of any court of record convicting an attorney of a crime, whether the conviction resulted from acceptance by the court of a plea of guilty or nolo contendere, or a verdict after trial, is conclusive evidence of the attorney's guilt of that crime. As used in this Rule, "final judgment" means a judgment as to which all rights to direct appellate review have been exhausted. The introduction of the judgment does not preclude the Commission or Bar Counsel from introducing additional evidence or the attorney from introducing evidence or otherwise showing cause why a disposition other than disbarment should be entered.

**(j) Statement of Charges.** If the Supreme Court denies or dismisses a petition filed under section (c) of this Rule, Bar Counsel may file a Statement of Charges under Rule 19-718.

"was found guilty of a serious crime within the meaning of Maryland Rules 19-701(t) and 19-738(a)" and, as such, violated Maryland Rule 19-308.4.[3] Under Rule 19-701(t), a "serious crime" is defined as:

> (1) a felony under Maryland law, (2) a crime committed in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland or in violation of Maryland law, (3) a crime under federal law or the law of any state that is punishable by imprisonment for three years or more, or (4) any crime, a necessary element of which, as determined by the statutory or common law definition of the

---

**(k) Duties of Clerk of Supreme Court.** The applicable provisions of Rule 19-761 apply when an order is entered under this Rule.

[3] Rule 19-308.4 provides:

It is professional misconduct for an attorney to:

**(a)** violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

**(b)** commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;

**(c)** engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

**(d)** engage in conduct that is prejudicial to the administration of justice;

**(e)** knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this section;

**(f)** state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Maryland Attorneys' Rules of Professional Conduct or other law; or

**(g)** knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt, conspiracy, or solicitation of another to commit a serious crime.

The Court issued a show cause order under Rule 19-738(d) directing Ms. Mosby to "show cause in writing why she should not be suspended immediately from the practice of law in the State of Maryland until further order of this Court[.]" In her response, Ms. Mosby does not dispute that she was convicted of serious crimes. Instead, Ms. Mosby emphasizes the "utter panic," "closure of entire industries," and the deaths "in the thousands" that resulted from the COVID-19 pandemic, all of which, she says were compounded by the "racial reckoning in [the] United States."

She contends that in "this tumultuous period, [she], like thousands of other Americans, withdrew money from her 'own' retirement savings account." Ms. Mosby notes that according to a government witness at trial, 739 Baltimore residents did the same thing, but "none of [them] were prosecuted." She points out that she had every right to withdraw her own funds from her retirement account and insists that her conduct involved neither deceit nor dishonesty. Ms. Mosby contends that neither a client nor the public was harmed and thus her convictions amount to "a personal tragedy amidst the backdrop of an otherwise unimpeachable legal career." As to what the convictions reveal about her character, Ms. Mosby said this:

> The crime itself offers little insight into her character. At best, she withdrew her own money. At worst, she committed perjury in obtaining her own money.

**[Resp. at 13.]**

8

Ms. Mosby's assertion that no client was harmed by her conduct is beside the point. She was not a lawyer in private practice serving clients; nor was she a government lawyer representing an agency of the State or local government. She was the State's Attorney, representing the State of Maryland in criminal prosecutions in Baltimore City. What matters is what her conduct, as found by the jury, says about her character.

Ms. Mosby has not come to terms with the gravity of the offenses of which two juries found her guilty. Her insistence that the public was not harmed by her conduct, as found by the jury, is simply wrong. Because of the shutdown of large swaths of the economy, millions of Americans lost their jobs. Others were furloughed; others saw their hours reduced; and still others had their wages reduced. Ms. Mosby, a public servant whose salary was paid by Maryland taxpayers, was one of the lucky ones who continued to receive her full salary without interruption.

The CARES Act aimed to alleviate such financial hardships by, among other things, permitting qualified individuals to tap into their retirement accounts without incurring the 10 percent penalty. The federal government went deeper into debt to provide this and other forms of financial relief to those in need. This had a cost—a cost to be borne by, among other people, the same Americans (including Marylanders) who lost their jobs, saw their income go down, and depleted their savings to weather the coronavirus storm. And future generations who will be saddled with the federal government's growing debt will share in the costs as well. So, contrary to Ms. Mosby's assertions, the public *was* harmed by her perjury, as found by the jury, that enabled her to avoid paying a penalty on the early withdrawals.

To be sure, Ms. Mosby had a right to withdraw funds from her retirement account. But as Ms. Mosby should know, that's not the point. Because she did not qualify under the CARES Act, she was required to pay the penalty associated with her withdrawals. As one of the lucky ones who continued to be paid a full salary with public funds, that's not too much to expect. But she did not do that; instead, as the jury found, she perjured herself to take advantage of a federal benefit for which she did not qualify. And by avoiding the penalties that she was required to pay, she did so at the expense of the very people she was elected to serve, as every dollar she saved by committing perjury was another dollar the federal government had to borrow.

Ms. Mosby makes no mention of her February 2024 conviction for, according to the verdict form, "making a false statement to a mortgage lending business relating" to one of her homes in Florida. It's as if it didn't happen. But even if this omission were inadvertent, and she intended to argue that this crime likewise did not harm the public, again she would be wrong.

The bank collapses of 2008-2009 are a recent example of how the failure of banks can harm the economy. Bank deposits are insured by the FDIC, a federal agency. So, if a bank fails, the loss of customer deposits will ultimately be borne by the public. Banks are in the business of making loans and underwriting a potential loan based in part on the information provided by the loan applicant. By providing false information on her application, Ms. Mosby deprived her lender of the opportunity to make an informed decision in approving her loan. When banks make uninformed decisions, the risk of making bad loans increases. As a former in-house attorney for Liberty Mutual, in the Special

10

Investigative Insurance Fraud Division, no less, Ms. Mosby should understand that false information distorts the underwriting process. Did Ms. Mosby's misrepresentations alone put the bank at risk of failure? I very much doubt it, but that's not the point. Enough bad loans will sink a bank. Ms. Mosby's misrepresentations increased that risk. And that increased risk was borne by the public.

I assume Ms. Mosby will file post-trial motions in the trial court and, if need be, pursue an appeal. Of course, she has a right to do so, and no member of this Court would *ever* hold that against her. But at this stage, we must determine, based on the information that we have, whether Ms. Mosby's immediate suspension is warranted "to protect the public from acts of an attorney who has been convicted" of crimes involving intentional dishonesty. *Attorney Grievance Commission v. Protokowicz*, 326 Md. 714, 715 (1992).

Ms. Mosby was convicted by two juries of her peers of separate crimes that speak directly to her character. Although I may be persuaded otherwise if this matter comes back to us on a full record, for now, based on the findings of both juries, I am constrained to conclude Ms. Mosby presents an unacceptable risk of harm to the public if permitted to practice law in Maryland. This conclusion is informed by my concern that the public perception of the judicial system would be undermined if an attorney convicted of such crimes is not promptly sidelined.

Accordingly, I respectfully dissent. Justice Biran has authorized me to state that he joins this dissent.

11